REINALDO PASCUAL, demandante y recurrido, *v.* FRANCISCO FERNÁNDEZ SIERRA y YOLANDA LLOPATEGUI, demandados; BERENS MORTGAGE BANKERS. INC., tercerista y recurrente.

*Número:* R-78-213 *Resuelto:* 9 de febrero de 1979

*José Garrido Monge, Luis León* y *L. León Freyre,* abogados de la tercerista y recurrente; *C. R. López de Victoria* e *I. R. López de Victoria,* abogados del demandante y recurrido.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

En su intervención por vía de demanda enmendada de tercería e *injunction* alega la recurrente Berens Mortgage Bankers, Inc. (Berens) que el 30 de enero de 1974 mediante escritura Núm. 51 ante el notario Lic. José Garrido Monge, el recurrido Reinaldo Pascual y su esposa Sara Domingo vendieron a los esposos Francisco Fernández Sierra y Yolanda Llopategui por precio de $55,000 un solar de 554.86 m/c y casa de concreto en la Urbanización San Fernando, del Barrio Monacillos de Río Piedras; y que por escritura Núm. 52 de igual fecha y ante el mismo Notario, los compradores constituyeron "primera hipoteca" sobre la citada finca urbana en garantía a Berens de pagaré evidencia de préstamo por $55,000 que ésta les facilitó para pagar el precio; que al día siguiente 31 de enero de 1974 los compradores y deudores Fernández Sierra y esposa otorgaron la escritura Núm. 4 ante el notario Lic. Alberto Sepúlveda sobre constitución de hipoteca garantizando un pagaré al portador por la cantidad de $5,300 que entregaron a su vendedor Reinaldo Pascual; que esta segunda hipoteca fue presentada en el Registro de la Propiedad el 8 de febrero de 1974 y la de Berens se presentó el 26 del mismo mes y año, resultando el crédito de ésta pos-

tergado al inscribirse como segunda hipoteca, detrás del de Pascual que fue inscrito como primera, en estricto orden de presentación; que en 26 de enero de 1977 Pascual radicó demanda contra sus compradores y deudores, en cobro de $2,650 e intereses, importe del segundo plazo de su pagaré hipotecario, obtuvo sentencia en rebeldía y procedió a la ejecución del inmueble llegando hasta subasta en que compareció como único licitador y la cual fue anulada por falta de notificación a los acreedores posteriores; y que subsanado el error y de seguirse la ejecución con nueva subasta, Berens no tendría más remedio para proteger su crédito, que pagar la acreencia de Pascual, erogación y desembolso adicional que no fue contemplado en su préstamo a los compradores. Termina solicitando la suspensión de la subasta y el reconocimiento de su hipoteca como primero y preferente gravamen sobre la referida finca urbana.

A la demanda de Berens siguió su moción de sentencia sumaria en la que incorpora los hechos esenciales de la primera, destacando el hecho de que "fue intención y propósito de todas las partes en esa negociación, vendedores, compradores y Berens, sin cuya condición ésta no hubiera facilitado el préstamo, la de que la hipoteca a favor de Berens tuviera rango de primera hipoteca, como es costumbre en estos casos"; y añade:

"El demandante Reinaldo Pascual que es el tenedor del pagaré por $5,300.00 y que como tal inició la ejecución origen de este expediente, no puede considerarse como tercero de buena fe, porque si bien no intervino en el contrato de hipoteca en garantía de ese pagaré, Pascual tenía conocimiento de los pactos o convenios habidos entre las partes en la oportunidad en que él vendió su casa, en el sentido de que la hipoteca de Berens debía tener el concepto de primera hipoteca.

El Sr. Pascual no puede acogerse a los beneficios que concede la ley a los terceros y al principio de primero en tiempo, primero en derecho, sabiendo, como sabía, que la hipoteca de Berens tenía que ser preferente a cualquiera otra de fecha posterior.

El Sr. Pascual pretende aprovecharse del descuido o falta de diligencia de Berens en llevar con rapidez al registro la copia certificada de su escritura de hipoteca, y se apresuró en llevar la suya que era de fecha posterior, a fin de que se inscribiera con anterioridad, convirtiendo así, desde el punto de vista registral en primera hipoteca la que debió tener el rango de segunda.

Pascual tenía conocimiento, fuera del registro, de la disconformidad entre lo que aparece del registro y lo que era la realidad extraregistral, circunstancia ésta que lo priva del requisito de la buena fe. El sabía de la verdadera situación jurídica de su derecho de hipoteca la cual no se reflejaba exactamente en el registro."

■ En su contestación a la demanda de tercería de Berens, el vendedor Pascual no controvierte la alegación esencial de que al otorgar la escritura de compraventa fue enterado y aceptó que la hipoteca garantizando el préstamo de Berens para pago del precio tendría rango de primera, por lo que debe considerarse admitida. (¹) A igual conclusión es forzoso llegar examinado el escrito de oposición por el demandante Pascual a la solicitud de sentencia sumaria de Berens en la cual tampoco niega(²) los párrafos arriba transcritos en los que se le imputa falta de buena fe excluyente de toda condición de tercero. Ha descansado exclusivamente en la teoría de que nuestra decisión en *Ponce Federal Savings* v. *Registrador*, 105 D.P.R. 486 (1976), no permite cuestionar la buena fe de quien gana prioridad con la simple presentación en el Registro.

---

(¹) Regla 6.4 de Procedimiento Civil. *Consecuencias de no negar.*
"Las aseveraciones contenidas en cualquier alegación que requiera una alegación respondiente y que no se refieran al monto de los daños, se tendrán por admitidas si no se negaren en la alegación respondiente."

(²) Regla 36.5 de Procedimiento Civil. ". . . Cuando se presente una moción solicitando que se dicte sentencia sumaria y se sostenga en la forma provista en esta Regla 36, la parte contraria no podrá descansar solamente en las aseveraciones o repulsas contenidas en sus alegaciones, sino que vendrá obligada a contestar en forma tan detallada y específica, como lo hubiere hecho la parte promovente, exponiendo aquellos hechos materiales que cree que intenta probar. Si no contestare bajo juramento, deberá dictarse sentencia en su contra."

El 11 de mayo de 1978 la Sala de San Juan del Tribunal Superior dictó sentencia sumaria desestimando la reclamación de Berens y ordenando la continuación de la ejecución de sentencia obtenida por Pascual. Al recurso de revisión de la tercerista Berens notamos inaplicación de *Ponce Federal Savings*, supra, y el 29 de septiembre de 1978 expedimos la siguiente orden:

"Se concede al demandante-recurrido un término a vencer en 13 de octubre de 1978 para que muestre causa por la que no deba ordenarse la paralización de los trámites de ejecución de sentencia en el caso civil Núm. 77-485 de la Sala de San Juan del Tribunal Superior, dejar sin efecto la sentencia dictada en 11 de mayo de 1978 contra el tercerista Berens Mortgage Bankers, Inc., y remitir el caso al tribunal de instancia para ventilar la cuestión de si el demandante es o no tercero de buena fe por haber tenido conocimiento de los pactos o convenios habidos entre las partes en el acto de la venta de la propiedad objeto del pleito en el sentido de que la hipoteca constituida a favor del tercerista Berens habría de tener el rango de primera hipoteca, y por tanto ser preferente a la hipoteca constituida a favor del demandante-recurrido."

La contestación del recurrido Pascual sigue aprisionada en el argumento de que el ser o no ser el primer presentante un tercero de buena fe, es cuestión irrelevante a la prioridad conferida a quien primero llega al Registro.

Empezaremos por recordar que *Ponce Federal Savings* v. *Registrador*, supra, se resolvió en el limitado cauce del recurso gubernativo, en el cual nunca se suscitó, pues no lo permite dicho procedimiento, cuestión alguna sobre tercero de buena fe. Allí no fue parte el primer presentante y el recurso fue finalmente desestimado por aparecer que la Registradora no restó valor legal a los documentos del Banco, ni tenía facultad para adjudicar rangos diferentes a los que resultan del "automatismo dictado por la cronología" (3) de la presentación. Por igual razón de no cuestionarse la buena fe del

---

(3)*Ibid.* pág. 493.

432

presentante, tampoco sostiene al recurrido lo resuelto en *Riera* v. *Registrador de San Juan I*, 23 D.P.R. 540, 545 (1916).

 La extensión del asiento de presentación es operación obligada para el Registrador si el título reúne los requisitos necesarios para practicarla. Sin embargo, la eficacia del principio *prior tempore, potior jure* en cuanto se proyecta más allá de la formalidad que otorga una preferencia automática a quien primero llega al Registro, está supeditada al principio de fe pública registral, y como dice Roca Sastre([4]) "concretamente a la necesidad de que el favorecido por la prioridad reúna la condición de tercero hipotecario." El ilustre comentarista, al afirmar que el principio de fe pública condiciona material o sustancialmente, aunque no formal u objetivamente, al de prioridad, dictamina: "En el orden *formal o adjetivo*, esto es, en lo relativo al procedimiento registral o modo de proceder el Registro, éste sólo ha de tomar en consideración el principio de prioridad, pues la fe pública registral es materia ajena al Registrador y, por tanto, únicamente ha de tener presente el *orden de presentación de los títulos* o actos registrables. Pero en el aspecto *material o sustantivo*, esta rigidez cronológica quiebra cuando el favorecido por el principio de prioridad no está protegido a su vez por la fe pública del Registro."([5]) (Énfasis en el original.)

---

([4])Derecho Hipotecario, 6ta. ed., Tomo 2, pág. 157.

([5])A renglón seguido Roca Sastre, *ibid.*, amplía con el ejemplo:

"Y así, en el caso clásico de la doble venta de una finca, si el segundo comprador inscribe su título adquisitivo pero *carece de buena fe*, por ser conocedor de la venta primera, o bien la inscribe por vía de inmatriculación por no estar inmatriculada en el Registro la finca vendida, en ambos casos, si el primer comprador reacciona impugnando, por estos motivos, judicialmente la segunda venta y solicitando la cancelación de la inscripción correspondiente, la misma se derrumbará con su asiento, y con ello dejará de operar el principio de prioridad, pudiendo inscribir el primer comprador su título adquisitivo por virtud de la compraventa. Esto será debido a que el segundo comprador verificó una adquisición *a non domino*, que no es man-

■ En nuestro sistema inmobiliario registral, que es de inscripción, a diferencia de los sistemas de transcripción que concentran la energía protectora en el solo hecho de acudir antes a registrar, el principio de prioridad cede al de fe pública del Registro erigida en torno a la figura del tercero de buena fe. El rango o preferencia excluyente obtenido con la presentación al Registro a tenor del principio de primero en tiempo primero en derecho, no es final e irrevisable. Hay un recurso a los tribunales de justicia para litigar las cuestiones que afecten la virtualidad o legitimidad de la preferencia ganada en el Registro. La aplicación del Art. 34 de la Ley Hipotecaria, que regula los derechos de tercero es de la exclusiva competencia de los tribunales.

En el decurso del tiempo, nuestra jurisprudencia se ha enriquecido con precedentes valiosos que en observancia del rigor científico de nuestro Derecho inmobiliario ha elevado y sobrepuesto la calidad de tercero civil en plano superior al tercero hipotecario, reflejo inevitable del más vasto orden moral y jurídico realizado en el Código Civil, que no alcanza la mecánica externa, y en substancial grado formalista, del Registro de la Propiedad. Castán percibe como nota predominante del Derecho civil la presencia de "un elemento y un carácter interno de índole *racional* y *moral:* su contenido

tenida por el Art. 34 de la Ley Hipotecaria, porque este último precepto exige, para mantener tal adquisición, que el adquirente sea *tercero hipotecario*, condición esta que no puede ostentar por faltarle en un caso el requisito de la buena fe y en el otro por no haber adquirido del titular registral.

"Lo mismo ha de entenderse cuando el titular registral vende primero su finca y después hace donación de la misma, inscribiéndose ésta, pues en este caso la prioridad a favor del donatario cederá ante la presión del comprador perjudicado, por cuanto aquél, por no ser adquirente a título oneroso, no será protegido por dicho mismo art. 34 de la ley.

"Tampoco podrá prevalerse de la prioridad registral el comprador que conozca el hecho de que el vendedor impuso un gravamen que no llegó a inscribirse, sobre la finca comprada, o si tal comprador es un inmatriculante, o si en vez de comprador es un donatario." Roca Sastre, *Derecho Hipotecario*, Tomo II, 6ta. ed. (1968), págs. 157–158. (Énfasis en el original.)

434

legitimador, su justicia, es decir, su conformidad con la idea de justicia o, cuando menos, como dicen algunas direcciones modernas, su orientación o tendencia a lo justo. Esta exigencia racional o exigencia de justicia, consustancial al Derecho natural, es de rigor también para la existencia del Derecho positivo. Para que el estatuto positivo de la vida colectiva sea legítimo no basta que un orden cualquiera sea por él establecido; hace falta, además, que este orden sea puesto al servicio de la idea de la justicia, valor supremo que constituye la finalidad y razón de ser del Derecho. En definitiva, este elemento, más que ningún otro, es el que da su sentido específico a la noción del Derecho." (⁶)

Este Tribunal ha puesto el ordenado acceso al Registro al servicio de la idea de la justicia sentenciando: no puede considerarse tercero aquél que tiene conocimiento al adquirir el inmueble de las cargas que lo afectan, aunque no haya intervenido en el contrato inscrito. (*Valdés* v. *Del Valle, et al.*, 1 D.P.R. 25, 32 y ss. (1899) confirmado en *Cuebas* v. *Banco Territorial y Agrícola, et al.*, 19 D.P.R. 1171, 1174 (1913)); sin honrada intención no es factible acogerse al premio que el Art. 1362 del Código Civil otorga al primero de los dos compradores de una misma cosa raíz que llega primero al Registro de la Propiedad (*Abella* v. *Antuñano*, 14 D.P.R. 498, 505 (1908)); con Gómez de la Serna que "[n]o tiene buena fe el que habiendo presenciado el acto o contrato en virtud del cual uno se ha desprendido del dominio de la cosa y sabiendo, por lo tanto, y de ciencia propia, que corresponde al que delante de él la adquirió, la compra, o por cualquiera otra clase de contrato la obtiene del antiguo dueño con pleno conocimiento de que no lo es, y aprovechándose del descuido que tal vez tenga el primer adquirente en hacer la inscripción, se apresura a llevar la suya al registro para que

---

(⁶) Castán Tobeñas, *Derecho Civil Español, Común y Foral*, Tomo 1, Vol. 1, pág. 55, 10ma. ed. (1962).

con arreglo al artículo 17 no pueda ya inscribirse aquélla en que él intervino como escribano o como testigo. Favorecer esta adquisición tan de mala fe en perjuicio del que adquirió la misma cosa con buena fe, no sería moral ni justo: si prevaleciera, se abriría ancha puerta a lamentables abusos." (*Ninlliat v. Suriñac, et al.*, 24 D.P.R. 67, 76–77 (1916)); así la buena fe es uno de los requisitos que debe reunir el tercer adquirente para poder gozar de las ventajas que reporta el principio de la fe pública; y con Roca Sastre, "[l]a circunstancia de que el tercero haya adquirido de *buena fe,* como presupuesto necesario para la protección registral, es cosa embebida dentro del importante principio de la *fides pública registral.* . . . *Buena fe,* en el sentido técnico aquí empleado, es el *desconocimiento* por el tercer adquirente *de la verdadera situación jurídica* del derecho adquirido, en la parte no reflejada exacta o íntegramente en el Registro. Es la *ignorancia* de la *inexactitud registral,* entendida ésta en *sentido amplio.*" (Énfasis en el original.) (*Mundo v. Fúster,* 87 D.P.R. 363, 376 (1963)); "Pero ese solo hecho no le da la protección hipotecaria que invoca. Hay que adicionarle su estado de buena fe civil . . . aquel que demuestra que el posterior adquirente no tenía conocimiento fuera del Registro de la *disconformidad* de los hechos entre lo que aparece del Registro y lo que pudiera ser la realidad." (*Sánchez v. Colón,* 97 D.P.R. 493, 497 (1969)) y por voz del Juez Jacinto Texidor,

"El Tribunal Supremo de España en buen número de decisiones ha declarado que aquél que conoce la existencia de un gravamen, o la situación jurídica de un inmueble, no es en realidad un tercero, en cuanto a ese gravamen o a esa situación. La ley no vive en un medio ambiente ficticio, sino en un conjunto de realidades. No basta, por sí solo, el elemento filosófico, el principio ético jurídico, para dar vida a la ley; ésta necesita, como necesita el cuerpo humano el aire para respirar, de los elementos históricos y circunstanciales. Por esa razón, el Tribunal Supremo de España en esas sentencias de que hablamos, han puesto la mirada en las realidades de la vida; y si una persona ha venido percibiendo con sus sentidos los signos evidentes de una servi-

dumbre, no puede por una ficción legal, ser un tercero con respecto a ese gravamen. Aparte de ese punto de vista, muestran esas decisiones la íntima relación entre el Derecho Civil, y su rama la Ley Hipotecaria, pese a los que pretenden independizar ésta de aquél. Con relación al Derecho Civil, la Ley Hipotecaria es un menor que nunca alcanzará la mayoría de edad." *Arroyo* v. *Zavala*, 40 D.P.R. 269, 272 (1929), seguido en *Colón* v. *Plazuela Sugar Co.*, 47 D.P.R. 871, 876 (1935) ([7]).

Tanto en su contestación a la demanda como en su oposición a la solicitud de sentencia sumaria, el demandante y recurrido Pascual ha admitido hallarse informado por conocimiento directo derivado de su presencia en el acto de otorgamiento de las escrituras de compraventa en que fue vendedor, y de hipoteca en garantía del pagaré por $55,000 entregado por sus compradores Fernández Sierra y esposa a Berens, de que este crédito hipotecario tendría rango de primero, como lo tiene usualmente la hipoteca dada a quien prestó su dinero para adquirir la vivienda. Su efímero triunfo presentando en el Registro su crédito hipotecario antes que Berens, se ha disuelto confrontado con el superior valor de justicia que le niega calidad de tercero de buena fe. Quien carece de la condición de tercero civil no podrá ganar la de tercero hipotecario por el puro mecanismo de un asiento de presentación. La carrera al Registro no puede imponer la postergación involuntaria de un gravamen preferente.

Nuestra orden para mostrar causa intimaba la devolución del caso a instancia para que en juicio plenario se dilucidara la cuestión de si el demandante Pascual es o no un tercero de buena fe, pero éste con sus alegaciones ha excluido toda

---

([7]) A la pág. 876 de *Colón* v. *Plazuela*, supra, nos unimos a la doctrina expresada en veinte sentencias del Tribunal Supremo de España que puede condensarse así:

"No puede alegar su cualidad de tercero hipotecario, aquél que tiene perfecto conocimiento de las condiciones con que hubo de verificarse la adquisición, aun cuando éstas no consten en el Registro, ya ese conocimiento se derive de actos realizados por el supuesto tercero, ya de hechos que tienen que herir forzosamente los sentidos. . . ."

necesidad de vista evidenciaria, todos los hechos materiales están propiamente ante nuestra consideración y no queda área de controversia ni punto justiciable que amerite un juicio plenario. *Cf. Fuentes* v. *Srio. Hacienda,* 85 D.P.R. 492 (1962).

*Se expedirá el auto y se dictará sentencia concediendo la solicitud de sentencia sumaria de la interventora recurrente Berens Mortgage Bankers, Inc. y adjudicando rango preferente en el Registro de la Propiedad a su crédito hipotecario. Revocada.*

El Juez Presidente Señor Trías Monge disintió sin opinión.