**In re Ana J. DE JESUS SAEZ, Debtor.**

**Luis E. Martir LUGO, Plaintiff,**

v.

**Ana J. DE JESUS, et al., Defendants.**

**Bankruptcy No. B–81–00039(B).**

**Adv. No. 81–0332.**

United States Bankruptcy Court,
D. Puerto Rico.

March 31, 1982.

Moisés Gómez Rijos, Hato Rey, P. R., for debtor-co-defendant, Ana J. De Jesús.

Peter J. Trías, Hato Rey, P. R., for plaintiff, Luis E. Martir Lugo, Rio Piedras, P. R.

Ciro Betancourt, Santirrce, P. R., for co-defendant George Rieckehoff.

Robert J. Griswold, San Juan, P. R., trustee.

### FINDINGS, CONCLUSIONS, AND OPINION

WILLIAM H. BECKERLEG, Bankruptcy Judge.

FINDINGS:

1. On Jan. 30, 1981, defendant Ana J. De Jesús Sáez (hereinafter "De Jesús"), filed a case under Chapter 13 of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 1301 et seq. On that date, De Jesús was the registered owner of real property located at AK–46, Estancias Río Hondo, Bayamón, Puerto Rico. As of Jan. 30, 1981, the said real property was subject to three real estate mortgages, the third of which was in the principal amount of $5,500 and held by defendant George Rieckehoff (hereinafter referred to as "Rieckehoff"). Rieckehoff had earlier brought a foreclosure action in the District Court of Bayamón against this property based upon non-payment of interest, and had obtained judgment in his favor on December 1, 1980; this judgment became final on January 20, 1981, and subsequent to the filing of De Jesús' Chapter 13 case Rieckehoff obtained an order from the District Court of Bayamón pursuant to which the marshall of that court issued a notice of judicial sale of the property to be held April 1, 1981. No bidders appeared at the judicial sale, and a second sale was scheduled by the marshall for May 14, 1981.

2. Having now acquired knowledge of De Jesús' Chapter 13 case, Rieckehoff on April 7, 1981 filed an adversary proceeding (# 81–0097); in his complaint Rieckehoff alleged substantially the facts set forth in Finding of Fact No. 1, and requested relief from the automatic stay so that the second public sale might be held by the marshall. De Jesús' answer is a general denial. Rieckehoff did not actively prosecute this complaint and same was dismissed on Dec. 1, 1981 for failure to prosecute.

3. Despite Rieckehoff's knowledge of De Jesús' Chapter 13 case, he caused the notices of the second public mortgage foreclosure sale to be published in the newspaper "El Día" on April 30, and May 7, 1981 and to be displayed at public places in Bayamón.

4. De Jesús, meanwhile, was having her own problems; because of her failure to appear at a continued # 341 meeting scheduled for April 30, 1981, and her failure to file an amended plan and schedules, we dismissed her Chapter 13 case for failure to prosecute by order dated May 6, 1981 and entered May 11, 1981. On May 7, 1981, copies of this order of dismissal were mailed to all parties in interest including Rieckehoff; on May 13, 1981, debtor filed for reconsideration.

5. The second public mortgage foreclosure sale of De Jesús' property now was held by the marshall of the District Court of Bayamón, as scheduled, on May 14, 1981 and defendant Carlos Martir Santiago (hereinafter Carlos Martir), acquired the property for $7,701 plus the senior liens, and a deed of judicial sale was duly executed the next day by the marshall and the property recorded in the names of Carlos Martir and his wife in the Bayamón Registry of Property on May 26, 1981.

6. On said public sale a state court judge by the name of Juan Ortíz Torrales appeared, interested in acquiring the debtor's property. Mr. Ortíz Torrales knew of these bankruptcy proceedings as he had been present at the 341 first meeting of creditors previously held in this court.

7. Mr. Ortíz Torrales in that occasion, called the attention of the Superior Court Chief Marshall of Bayamón, Mr. William de la Torre, the person entrusted of the Judicial sales in Bayamón, Mr. Manfredo Rodríguez; as well as of Mr. Carlos Martir, who would eventually prevail in the auction to the effect that the property at bar was under the Bankruptcy Court jurisdiction.

8. Still interested in acquiring the debtor's residence, Judge Ortíz Torrales called then plaintiff, an attorney known by him and who is nephew to Mr. Carlos Martir, and after revealing him all the incidents through which this property has gone by, he requested his help to see if he could buy said house from his uncle.

9. Now plaintiff, who had plans to marry, on June 15, 1981, purchased said property from his uncle Carlos Martir and his wife, recording on his name in the Registry or Property for Bayamón on June 17, 1981.

10. Plaintiff, on June 17, 1981, took possession of the property and commenced making repairs and improvements thereon. Plaintiff spent $385.00 in fees and stamps in the acquisition of the property, $6,609.26 in maintenance, repairs and improvements, and through Dec. 1, 1981 had made 6 payments on the 1st mortgage, (which he had assumed) totaling $1,548.00. All these payments were made on subsequent to June 15, 1981.

11. This court has meanwhile set for hearing De Jesús' motion to reconsider the dismissal of her Chapter 13 case and on June 16, 1981 we heard debtor. We also heard attorney Ciro Betancourt, attorney for Rieckehoff, and De Jesús on a further motion filed by De Jesús on June 3, 1981 to declare null and void the public sale of May 14, 1981.

12. On June 16, 1981, we granted De Jesús' motion for reconsideration and reopen her Chapter 13 case.

13. On June 18, 1981, De Jesús met with Carlos Martir and plaintiff, and informed them of her bankruptcy case. She also executed on this date a sworn statement before plaintiff to be presented to the Dept. of the Treasury to reduce the taxes on the property in question on the basis that it was her residence until October 1979.

14. On June 25, 1981 and on July 2, 1981, De Jesús and Rieckehoff filed informative motions with this court setting forth chronologically the sequence of the events relating to the sale of the property in question; these informative motions did not inform the court that on June 15, 1981 plaintiff had purchased the property nor that De Jesús had met with Carlos Martir and plaintiff on June 18, 1981.

15. On August 10, 1981, a memorandum opinion and order of ours is entered under which we conclude that the automatic stay of Section 362 by virtue of Bankruptcy Rule 762 continued in effect for a period of 10 days after the entry of the order dismissing De Jesús case, that is the automatic stay continued in effect during the 10 days subsequent to our order of dismissal entered May 11, 1981; and that thus the public sale to Carlos Martir on May 14, 1981 was null and void and without legal effect.

16. In August (exact date unknown), plaintiff married. As the property was not available to him, he moved with his new wife to Fajardo where he paid rent of $150 a month and incurred travel expenses to and from his office in Bayamón of $95 a week.

17. On Sept. 24, 1981, De Jesús took possession of the property removing the padlock thereon and placing her own. This action of De Jesús was not authorized or supported by any order of this court, or of any other court, except, possibly, our order of August 10, 1981 (See Finding No. 15).

18. On Sept. 28, 1981, plaintiff filed the present proceedings.

19. On October 27, 1981, Juan Ortíz Torrales confirmed in writing his offer for the property in question in the amount of $61,-327. No action has been taken on this offer pending the disposition of these proceedings.

## OPINION AND CONCLUSIONS

We start with our order of August 10, 1981, by which our continued jurisdiction over the realty in question was confirmed; that order dealt with the automatic stay and decided that it continued in effect for 10 days after the order of dismissal of May 11, 1981 herein by virtue of Bankruptcy Rule 762 (FRCP 62). Since the stay continued, our jurisdiction over the property likewise continued during this 10 day period. Thus, we held, the sale in the Bayamón District Court of May 14, 1981 was null and void.

Plaintiff now alleges that he is a good faith purchaser who purchased for a present fair equivalent value, thus entitled to the title and possession of the property at bar, or, in the alternative, that he is entitled to recover from the defendants the consideration paid, improvements made and damages incurred. He declared that he had searched the Registry of Property, Bayamón Section, prior to purchase and that there was no recordation of De Jesús bankruptcy case and that he could not have acquired the knowledge there.

Was plaintiff a good faith purchaser? We conclude that he was not. The Bankruptcy Code in Section 549(c) provides as a requisite for being a good faith purchaser the lack of knowledge of the commencement of the bankruptcy case. Similar provisions are set in Section 542(c) and Section 550(b) of the Bankruptcy Code.

Plaintiff was well informed of these proceedings when Judge Ortíz Torrales called and told him of its existence.

It is true that the Puerto Rico Supreme Court has stated in *Lizardi v. Caballero*, 65 DPR 77 (1945) that the purchaser need only consider the record in the Registry to determine whether the cause of nullity appears clearly from the registration.

"This is the doctrine accepted by the commentators. 'The acquirer is not bound to resort to any other source of juridical information that the Registry which is the means of acquainting himself with the actual status of the property.' Sanz Fernández, Comentarios a la Nueva Ley Hipotecaria 259 (Madrid)."

*People v. Riera*, 27 PRR 1 (1919); *Rubio v. Roig*, 84 PRR 331 (1962).

But it is also true that they have also required the lack of knowledge of the defect that produces the nullity in the title.

"We have held, however, that if the acquirer has personal knowledge of the defect which produces the nullity, he is not protected by the record of the Registry. *Alvarez v. Aponte*, 83 PRR 595 (1961); *Quintana v. Capital of Puerto Rico*, 51 PRR 103 (1937); *Cuebas v. Banco Territorial & Agrícola et al*, 19 PRR 1109 (1913); *Blanco v. Hernández et al*, 18 PRR 686 (1912); *Suris v. Quiñones et al*, 17 PRR 614 (1911); *Abella v. Antuñano*, 14 PRR 485 (1908); *Valdés v. Valle & Noble*, 1 STS PR 75, 95 (1899)."

This doctrine was reaffirmed in *Mundo v. Fuster*, 87 PRR 343 (1963) and on *Pascual v. Fernández Sierra*, 108 DPR 426 (1979). In this last case it was decided that it is precisely the state of civil good faith, to wit, the lack of knowledge of facts of disconformity or defects that do not appear from the Registry, what gives the registral protection to the good faith Third acquirer. See also *Sánchez v. Colón*, 97 DPR 493 (1969).

We give full credibility to Judge Ortíz Torrales declaration and therefore we hold that plaintiff had previous knowledge of the bankruptcy case and that therefore he is not a good faith purchaser. The title and possession of debtor's property is hereby awarded to debtor's estate.

Plaintiff has incurred in a number of expenses and costs while acquiring and after he bought the debtor's property. What are his rights? Section 3835 of Title 31 LPRA establishes what are the rights of a vendee upon eviction but those rights are only demandable after final judgment. To that effect Section 3837 of Title 31 of the Puerto Rico Laws Annotated says

"A warranty (in case of eviction) cannot be demanded until a final judgment may have been rendered by which the vendee should be adjudged to lose the thing acquired or a part thereof."

Therefore, this cause of action as it stands right now is not ripe for adjudication and even more being this an action to be brought by the vendor against the vendees, being neither of them debtors, this would probably be a situation for this court to abstain from, pursuant to Section 305 of the Bankruptcy Code.

Defendant George Rieckehoff raised a cross claim (although not properly named as such), when in his affirmative defense # 4 filed in this court on October 28, 1981, he stated that:

"In the event that the court should decide that co-defendant George Rieckehoff could be in any way liable to plaintiff, co-defendant and debtor Ana J. De Jesús is responsible to George Rieckehoff for any and all amounts that he becomes obligated to pay to plaintiff."

Debtor herein, Ana J. de Jesús, also filed on December 9, 1981, a cross-claim against co-defendant George Rieckehoff for damages suffered by her due to Rieckehoff actions. Let's analyze how the judicial sale of debtor's property occurred.

On Jan. 30, 1981, De Jesús filed her Chapter 13 case; the filing of this case triggered an automatic stay of all actions against debtor and this included Rieckehoff's foreclosure action. Despite the stay, and his knowledge of it, Rieckehoff initiated or caused the following acts to be undertaken in the mortgage closure case:

| Date | Action |
| --- | --- |
| Feb. 23, 1981— | Motion requesting permission to execute judgment |
| Feb. 23, 1981— | Motion filing affidavit of publication of summons |
| Feb. 26, 1981— | Order in execution of judgment |
| Feb. 26, 1981— | Order to marshall to sett at public auction |
| March 11, 1981— | Affidavit of posting of Notice of Auction |
| March 11, 1981— | Notice of Auction published in "El Día" |
| March 18, 1981— | Notice of Auction published in "El Día" |
| April 1, 1981— | Auction held and Report of same filed |
| April 20, 1981— | Notice of Second Auction issued |
| April 30, 1981— | Notice of Second Auction published in "El Día" |
| May 7, 1981— | Notice of Second Auction published in "El Día" |
| May 12, 1981— | Affidavit of posting of Notice of Second Auction |
| May 14, 1981— | Second Auction held and Marshall's Report filed |

| | |
|---|---|
| May 15, 1981— | Marshall's Deed of Sale |
| May 15, 1981— | Motion to Retire Funds from Auction |
| May 18, 1981— | Marshall's Deed of Sale Presented to Registry |
| May 22, 1981— | Order authorizing Marshall to pay funds to Rieckehoff |
| Sept. 16, 1981— | Resolution and Order of District Court of Bayamón |

All of the above actions occurred subsequent to the filing of the Chapter 13 case by De Jesús. Many occurred *before* our order of May 7, 1981 which initially dismissed De Jesús' case, and about half occurred *after* Rieckehoff filed his adversary proceedings in this court on April 7, 1981. The sequence of events clearly demonstrates to us a clear disregard by Rieckehoff on the automatic stay in this case, and a contemptuous behavior towards this court, its function, and the clearly expressed mandate of Congress in Sec. 362.

Even though we may accept that the herein debtor was not precisely diligent and that her actions may have caused some confusion it is not less true that the language of Section 362(a)(1) of the Bankruptcy Code is very clear. It prohibits

"the commencement or *continuation* . . . of a judicial or other proceeding against the debtor *that was or* could have been *commenced* before the commencement of the case under this title, . . . (emphasis added).

Rieckehoff's action in flaunting the automatic stay and proceeding to enforce his judgment by auction created the conditions under which plaintiff was able to acquire the De Jesús' realty and De Jesús lost same. Had De Jesús case not been initially dismissed the result would be exactly the same, for there is no reason to believe that on May 14, 1981, Rieckehoff would have suddenly respected the automatic stay he had been ignoring the past four and a half months. We cannot now permit Rieckehoff to avoid the results of his illicit acts by permitting him to hide behind De Jesús ineptitude in the prosecution of her case. Inept debtor or efficient debtor, the effect of the automatic stay is the same.

1. Rule 51.8 32 LPRA App. III R 51.8.

Had Rieckehoff stayed his foreclosure, had he ceased all prosecution of that case as Sec. 362 contemplates, there could have been no auction on May 14, 1981. Local law requires a notice of at least two weeks before a public auction can be held; as De Jesús' case was first dismissed by order of May 7, 1981, a public auction could not have been held before May 21, 1981, at the very earliest; by this date De Jesús case had been reopened [1]. Rieckehoff must then assume full responsibility of his acts as we rule that he, while violating Section 362 of the Bankruptcy Code, was the person liable of all the troubles, misfortunes and damages occurred in the case at bar.

We therefore conclude:

1. That the debtor's property consisting of a house located at AK–46, Estancias Río Hondo, Bayamón, Puerto Rico, belongs to the debtor's estate and is under the protection of this court's jurisdiction.

2. That plaintiff herein Luis E. Martir Lugo's cause of action is not ripe for adjudication.

3. Co-defendant herein, George Rieckehoff's counter claim is hereby denied.

4. Co-defendant herein George Rieckehoff, is also hereby found liable to debtor Ana J. de Jesús, for the grievances and mental anguish suffered by her, due to co-defendant's intentional acts. Said damages are valued by this court in the amount of $2,500.00. We also assign the amount of $2,000.00 for Ana J. de Jesús' attorneys fees.