**Ramon Iraola RIVERA and his wife Ana Maria Fernandez**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, et al.**

**Civ. No. 87–0938 (JAF).**

United States District Court, D. Puerto Rico.

March 13, 1989.

F. Castro Amy, Rafael F. Castro Lang, C. Pérez–Martínez, San Juan, P.R. for plaintiffs.

William H. Preston, Jr., Trias Doval Munoz Acevedo & Otero, San Juan, P.R., Rae Schupack Nathan, Regional Counsel (Liquidation) New York City, New York Regional Office FDIC, Nancy Pujals, Sr. Atty., for defendant FDIC.

Frank Pola, Jr., San Juan, P.R., for defendants Burgos & Rodriguez.

## OPINION AND ORDER

FUSTE, District Judge.

This action, before the court on removal pursuant to 12 U.S.C. § 1819 and 28 U.S.C. §§ 1441 *et seq.*, requires an interpretation of Puerto Rico's Mortgage Law. Plaintiffs, Ramón Iraola Rivera and Ana María Fernández, and the conjugal partnership formed between them, seek an order declaring null and void a local court foreclosure action and the subsequent judicial sale of property formerly owned by them. In addition, they seek annulment of the title of the subsequent purchasers of this parcel. The case is submitted on cross motions for summary judgment. Because there are no genuine issues of material fact, *see* Fed.R.Civ.P. 56(c), the court now grants judgment for the plaintiffs.

### I. *Factual and Procedural Background*

The factual and procedural underpinnings of this case are fairly complex, the property in question being the subject of a segregation and numerous transactions.

In the mid–1960's, plaintiffs were owners of a piece of real property described in the Registry of Property of Puerto Rico, Guayama Section. This land, hereafter referred to as the "main property," became subject to at least four mortgages, the first of which being the basis of the foreclosure sale here challenged by plaintiffs.[1] This particular mortgage guaranteed a bearer note for the principal sum of $115,000 and was constituted by plaintiffs through deed No. 47 of July 22, 1966 ("1966 Mortgage"). As stated in the mortgage deed, the property was evaluated at $120,000 for the purpose of the first auction in the event of a foreclosure.

On December 20, 1968, some two years after the execution of the 1966 mortgage, plaintiffs attempted to segregate from the main property a parcel of 1,297.27 square meters. This smaller parcel will hereafter be identified as "lot number seven." Lot number seven was recorded in favor of plaintiffs pursuant to deed No. 510 at page 17 of volume 304 of Guayama, property No. 10,018, first inscription; however, due to insufficient documentation, this segregation was not approved by the Regulations and Permits Authority at that time and did not in fact gain such approval until August 21, 1981, under circumstances discussed below. In any case, since 1968 plaintiffs have been and are now in possession of lot number seven, which is today being used as a parking area.

On September 25, 1971, by Deed No. 215, plaintiffs made a sale of the main property to Harfran Realty Corporation ("Harfran Realty") for the sum of $690,400. Although the entirety of the main property, including lot number seven, was technically transferred to Harfran Realty, the rec-

---

1. The other three mortgages on the property are described in plaintiffs' statement of material facts as follows:

    (a) a mortgage to guarantee a bearer note for the principal sum of $355,000 constituted by plaintiffs through deed No. 296 of September 12, 1969 before Notary Guillermo Bobonis Diaz, in which the real property was evaluated at $400,000.

    (b) a mortgage to guarantee a bearer note for the principal sum of $160,000 constituted by plaintiffs through deed No. 209 of October 19, 1970 before Notary Guillermo Bobonis Diaz, in which the property was evaluated at $200,000.

    (c) a mortgage to guarantee a bearer note for $60,400 executed by deed No. 214 on September 25, 1971.

ordation of Deed No. 215 makes clear that it was the intention of both parties to the sale that Harfran Realty would perfect the attempted segregation of lot number seven and that said lot would eventually pass back to the plaintiffs. In particular,

> The parties state that despite that the sale of this property was made in its totality, they have agreed and accepted that Lot Number 7 of the Plot of the Iraola Development, that is located in the property with an area of 1,247.27 square meters is not included in the sales price, the buyer agreeing to request the segregation of said lot and once segregated, title to the property of it shall pass or revert to the sellers.

As mentioned above, lot number seven was not successfully registered as a separate property belonging to plaintiffs until August 28, 1981.

At the same time plaintiffs sold the main property to Harfran Realty, the latter agreed to assume payment of the aforementioned four bearer mortgage notes. These four notes originally had been delivered by plaintiffs to J. & A. Investment Corporation ("J. & A. Investment") to guarantee loans made by J. & A. Investment to plaintiffs. The notes were in turn delivered by J. & A. Investment to Banco Crédito & Ahorro Ponceño ("Banco Crédito") in pledge as collateral to guarantee loans made by the latter to J. & A Investment. Said loans were apparently unrelated to these mortgage notes. Unfortunately for all of the parties involved, J. & A. Investment in time fell behind on its loan payments, and on January 13, 1978, Banco Crédito filed civil action 78–199 in the Superior Court of Puerto Rico against Jack Epstein as guarantor of J. & A. Investment, for the collection of $522,776.82 of loans due by the latter. The original complaint in this suit was strictly a personal action on a debt and did not mention any of the four mortgage notes discussed above. Nor did it request foreclosure on any property in order to satisfy the debt. Soon after the original complaint was filed, the Federal Deposit Insurance Corporation ("FDIC"), codefendant in the case at hand, was substituted as plaintiff after it had acquired Banco Crédito's interest in the J. & A. Investment loans. FDIC, then, once it had become a party to the action, filed an amended counterclaim dated November 6, 1979 seeking judgment against J. & A. Investment, as debtor, and Jack Epstein, as guarantor. This amended counterclaim also sought to satisfy the debt by selling the four bearer notes issued by the plaintiffs which the FDIC now held in pledge. Nevertheless, the counterclaim, as in the case of the original complaint before it, did not mention the mortgages guaranteeing the bearer notes. Nor did it request the foreclosure of said mortgages or include either Harfran Realty or the plaintiffs as party defendants to the suit.

On April 19, 1982, FDIC filed an "amended complaint," this time naming as party defendants J. & A. Investment and Harfran Realty. Also, for the first time in the history of this suit, a request was made to foreclose on the four bearer mortgage notes. The amended complaint did not, however, name as defendants the plaintiffs in the case at hand in spite of the fact that lot number seven, which was encumbered by at least one of the mortgages sued upon, was by this time recorded in their names.

The facts alleged in FDIC's amended complaint were uncontested by the defendants in that action, and consequently judgment was granted for the FDIC on May 12, 1982. On September 14, 1982, pursuant to 30 L.P.R.A. § 2709, the Registrar of Property issued a certificate erroneously stating that the sole owner of the property subject to the foreclosed mortgage was Harfran Realty. No mention was made in this certificate of plaintiffs' recorded interest in lot number seven. Nevertheless, plaintiffs were notified of the upcoming judicial sale, at which they presented their claim of ownership in lot number seven to the presiding marshal and to bidders present that day. The main property was then sold to codefendant FDIC. The sale price FDIC paid for the main property was $115,000, significantly below the minimum price of $120,000 provided for in the deed of the 1966 Mortgage.

Shortly after the judicial sale there arose one of the questions central to the present litigation—namely, whether the foreclosure and judicial sale of the main property included lot number seven. On June 20, 1983, the Registrar of Property refused to record FDIC's title to the main property because the Deed of the Judicial sale contained a defect in that "it fail[ed] to describe the remnant of the property after a parcel of 1,297.26 square meters [lot number seven] was segregated." At that point, on August 3, 1983, the FDIC filed a motion in the Superior Court for an "aclaratory order" stating that the property disposed of at the judicial sale included lot number seven. The following day the Superior Court granted this motion, and the property was subsequently recorded without defects in title in favor of the FDIC. Plaintiffs, moreover, never received notice of FDIC's motion nor were they afforded an opportunity to contest it before the court.

After the aclaratory order was issued, the main property including lot number seven became the subject of three different transactions. First, codefendant FDIC sold the property to codefendants Eliezer Burgos and his wife Ana L. Rodriguez, and their conjugal partnership, for $100,000. This sale was duly recorded. Second, codefendants Burgos and Rodriguez mortgaged the main property for the sum of $100,000 in favor of codefendant Banco Santander. This mortgage was not recorded with respect to lot number seven. Third, through a deed dated February 20, 1986, codefendants Burgos and Rodriguez sold the property to codefendant Jana Mortgage Bankers. This sale is pending recordation in the Registry. Finally, the court notes—and it is of no little significance—that at the time of several relevant transactions, codefendant Ana L. Rodriguez served as president, or in some other official capacity, in Harfran Realty, J. & A. Investment, and codefendant Jana Mortgage Bankers.

## II. *Discussion*

Plaintiffs filed the present action on July 2, 1987 [2] asking for the following relief: 1) that the judgment, public auction, and aclaratory order in civil action 78–199 be declared null and void with respect to lot number seven; 2) that plaintiffs be adjudged the exclusive owners of lot number seven; 3) that the mortgage over said lot held by codefendant Banco de Santander be declared invalid and without effect; and 4) that the Registrar of the Property, Guayama Section, be ordered to cancel the sales of said lot to defendant FDIC and by the latter to codefendants Burgos and Rodriguez and their conjugal partnership. Plaintiffs also ask for reasonable costs and attorney's fees.

In support of the requested relief, three theories are advanced. First, plaintiffs argue that because they were not named as party defendants in civil action 78–199, any judgment derived from that action cannot in conformity with due process be used to deprive them of their interest in lot number seven. Second, plaintiffs argue that the judicial sale of the main property is null and void because it was conducted without fixing a minimum first sale price. Finally, plaintiffs contend that the subsequent purchasers of lot number seven are not bona fide, third-party purchasers because they had both personal and record notice of plaintiffs' claim to this land.

## A. FDIC's Title is Null and Void

There can be little doubt that lot number seven was subject to the mortgage executed by plaintiffs in 1966 even though that parcel was eventually segregated from the main property. Section 174 of the Mortgage Law of 1979, 30 L.P.R.A. § 2570, provides as to the division of a mortgaged property as follows:

> If a mortgaged property is divided into two or more properties, *the mortgage loan shall be distributed among them when the debtor and the creditor so agree.* If the distribution is not made, the creditor may claim restitution for the total secured sum against *any of the new properties into which the first has been divided, or against all of them at the same time.* (Emphasis supplied.)

---

**2.** This action was originally filed in local court and removed at the request of defendant FDIC.

Prior to 1979, an identical provision existed under the Mortgage Law of 1893. *See* 30 L.P.R.A. § 219. Moreover, the fact that Harfran agreed to assume payment on the notes executed by plaintiffs does not relieve plaintiffs of liability absent consent by the mortgage creditor. *Teachers Annuity v. Sociedad de Gananciales*, 115 D.P.R. 277 (1984); *U.S. v. Rivera Rivera*, 671 F.Supp. 886 (D.P.R.1987). Because there is nothing in the docket to indicate that any of the creditors under the 1966 Mortgage agreed to liberate plaintiffs or lot number seven from that mortgage, defendant FDIC was clearly within its rights, in the event of a default, to proceed against any and all property covered by the 1966 Mortgage.

While plaintiffs have conceded this much, they point out that in order to foreclose on a mortgage and have the property sold in a public auction so as to satisfy the debt secured thereby, the action must be brought against the debtor and/or the owner of the property mortgaged, and service of process must be made on the latter in order for the court to obtain jurisdiction to enter a valid judgment. Because they were never a party to civil action 78–199 and never served with process, plaintiffs contend that the judicial sale conducted pursuant to the judgment is null and void with respect to property owned by them. To this end, plaintiffs cite the decision of the Supreme Court of Puerto Rico in *Sanquirico v. Registrar*, 44 P.R.R. 314 (1932). In that case, the court states the following:

> Mortgage credits may be foreclosed by the summary process provided in the Mortgage Law and its Regulations and also, as was done in the present case, in accordance with the decisions of this Court, by an ordinary action for the recovery of the debt and the sale of the mortgaged property, but in either case the action must be brought against the person appearing in the registry as the owner of the mortgaged property at the time the action is brought, as is required by section 129 of the Mortgage Law, the reason for such provision being that the actual owner, because of his interest in the property, should be sued rather than

> one who has no further interest therein, which principle is applicable to cases of foreclosure by ordinary action inasmuch as the same reason exists in both kinds of proceedings; and since the action in this case was brought against Carmen Paradis, and not against ... the owner of the property when the action was brought, the registrar's refusal to effect the cancellation was proper.

*Id.* at 316.

We agree that due process demands that the owner of the mortgaged property at the time of the action be sued before a foreclosure sale can dispose of that property. Nor does the fact that the property has been segregated alter this principle. Although neither party has cited case law on this point, it seems clear that the reasoning underlying *Sanquirico* applies to cases where the property has been segregated, and that a creditor should not be allowed to terminate the rights of one owner simply by suing someone who owns what is now an entirely separate piece of property. Rather, we believe that *Sanquirico* requires a creditor in an ordinary foreclosure action to bring the suit against the record owners of all the segregated sections he wishes to have sold in satisfaction of the debt.

This, of course, helps plaintiffs only if they were the record owners of lot number seven when the present action commenced, for if, rather, they recorded after the commencement of the action, Puerto Rico's Mortgage law does not require that they be made a party to the foreclosure proceeding in order for their rights to be affected. In *Housing Investment Corp. v. Registrar*, 10 Official Translations of S.Ct. of P.R. (Of.Tr.S.Ct.P.R.) 630 (1980), the plaintiffs filed an ordinary foreclosure action against the record owners of the mortgaged property. After plaintiffs had obtained judgment, however, they learned that the mortgaged property had been sold to third-party purchasers prior to the filing of the complaint, but that these new purchasers had not recorded their title until *after* the action had commenced. The Supreme Court of Puerto Rico held that the rule espoused

in *Sanquirico* was not applicable to this situation and that it was sufficient that the subsequent owners were given notice of the judgment and a "reasonable opportunity to take part in the public sale and satisfy the credit, plus interest and costs, before the judicial sale." *Id.* at 636 (citing *Retirement System v. Registrador*, 104 D.P.R. 791, 795 (1976)). The court reasoned that

> [t]he foreclosing mortgagee may and should depend on the status appearing from the Registry of Property, and file the complaint against the one appearing therein as owner in possession of the mortgaged real property at the beginning of the foreclosure action. Once the suit is commenced, he is under no obligation to make periodic inspections at the Registry to eliminate or add new parties to the complaint.

*Housing Investment Corp.*, 10 Of.Tr.S.Ct. P.R. at 637. (Footnote omitted.)

Here, as mentioned above, the determinative question is whether plaintiffs recorded their interest before or after civil action 78–199 commenced, and, thus, which of either the *Sanquirico* or the *Housing Investment Corp.* doctrine applies. Put a different way, the issue is whether civil action 78–199 "commenced," for the purposes of this question, with the filing of the original complaint in 1978 or with the amended complaint of 1982, for plaintiffs recorded their interest *after* the earlier date but *prior* to the latter.

We believe that the pertinent filing date is that of the amended complaint. The reason for this is simple: the original complaint in said action was strictly a personal action on a debt unrelated to the mortgage used to deprive plaintiffs of their property. That complaint did not mention plaintiffs as a defendant and it did not seek foreclosure on any mortgage executed by them. Most importantly, finding the latter the

pertinent date best conforms with policies underlying the title recording scheme. Although a mortgagee need not keep going back to the registry after a foreclosure action has been commenced, the law does require at least one consultation. In the present case, the logical time for the FDIC to consult the registry was before petitioning the court for foreclosure. Indeed, the FDIC would have no reason to determine the record ownership of the mortgaged property back in 1978 when this was merely an action for the collection of an unrelated loan. Neither would the FDIC have to determine ownership in 1979 when it filed its "amended counterclaim" seeking to sell at a public auction the mortgage notes, for one does not have to sue the owners of the encumbered real property in order to make a sale of the mortgage paper. Rather, the first time the FDIC was required to check the registry was in 1982 when it first requested foreclosure on the property. By that time, however, plaintiffs had recorded their interest in lot number seven. Therefore, we find that the FDIC was on record notice of plaintiffs' interest and was required by *Sanquirico* to make them a party to the foreclosure action in order for that action to affect plaintiffs' rights in lot number seven.[3] Likewise, it is irrelevant that plaintifs received notice of the judicial sale, because, as discussed above, *Sanquirico* requires more.

■ To avoid such a result, defendants in their brief point to two rulings by the local court in civil action 78–199 that they claim are determinative of the issues above. First, the local court found, in the context of determining whether a minimum price need be established at the judicial sale, that said action "commenced" with the filing of the original complaint and not with the amended complaint. Second, the

---

**3.** To the extent that it may be applicable, we find that Rule 13.3 of Puerto Rico Civil Procedure, dealing with when an amended complaint relates back to the original filing, dictates the same result. Rule 13.3 states that "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth in the original pleading, the amendments shall relate back to the date of

the original pleading." 32 L.P.R.A.App. III R. 13.3 It is hard to see how the amended complaint requesting foreclosure and a judicial sale "arose out of" the subject matter of the original complaint filed in 1978 because the original complaint was a personal action filed by Banco Crédito to recover on a debt unrelated to the mortgage executed by the plaintiffs herein.

local court's aclaratory order ruled that the judicial sale included lot number seven. It is apparently defendants' position, although they have done little to develop the argument, that these determinations deserve full faith and credit by this court, a view we find to be erroneous. It is indeed well settled that 28 U.S.C. § 1738 requires federal courts to give a state court judgment the same *res judicata* effect it would have in the court that entered it. *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). However, it is equally well settled that a person is "not bound by a judgment in personam resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110, 89 S.Ct. 1562, 1569, 23 L.Ed.2d 129 (1969); *see also Sherman v. Kirshman*, 369 F.2d 886, 889–90 (2d Cir. 1966). In this case, as discussed above, Puerto Rico law requires that process be served on the owner of any property involved in a foreclosure proceeding. Therefore, plaintiffs, who were not served with process in civil action 78–199 and not served with defendants' post judgment motion for clarification, cannot be bound by an order issued pursuant to that action. *Sánchez v. Colón*, 97 P.R.R. 481, 486 (1969). Moreover, even if full faith and credit were due in this case, such judgments are immune from attack only to the same extent they would be in the court that issued them, and Puerto Rico, like every jurisdiction we can think of, provides a procedure by which an aggrieved party can challenge a judgment issued entered without proper jurisdiction. *See generally Figueroa v. Banco de San Juan*, 8 Of.Tr.S.Ct.P.R. 723 (1979). We also note, with regard to the aclaratory order, that defendants' motion seeking the same was wholly uncontested by any party or non-party to the suit; the court acted without the benefit of an opposing brief and did not address any of the arguments outlined above. Moreover, with regard to the time of the action's commencement, the local court was addressing a different issue from the one at hand. That ruling set the time of commencement

for the purpose of determining the need for a minimum price at the judicial sale; here we have been concerned with whether the owner of a parcel need be named in a foreclosure suit. The relevant considerations for the two questions are obviously different, chiefly insofar as the considerations underlying the recording statute (discussed above) are not pertinent as to whether a minimum sale price need be set at a judicial auction.

For all of the above reasons, we find that the judgment in civil action 78–199 and the subsequent judicial sale is null and void under Puerto Rico law insofar as it transferred title of lot number seven to defendant FDIC. Because we make this determination on these grounds, we do not need to address the second argument concerning the failure to set a minimum price at the judicial sale.

**B. Codefendant Subsequent Purchasers are not Good Faith Third Persons**

■ We now turn to the issues involving the subsequent purchasers of lot number seven. The rights of subsequent purchasers are controlled by section 105 of Puerto Rico's Mortgage Law. 30 L.P.R.A. § 2355. That section protects a third party purchaser against the subsequent invalidation of the vendor's title, provided, first, that the third party acquired his or her right in good faith, and by paying a price, from a person who according to the registry had the power to convey it and, second, that the reasons for the invalidation do not clearly appear in the registry. Therefore, in this case, if codefendants Burgos, Rodriguez, and Jana Mortgage Bankers qualify as good faith third persons under section 105, then their title to lot number seven will be upheld against plaintiffs in spite of the fact that the judgment and judicial sale in favor of codefendant FDIC is found to be null and void.

As indicated above, codefendants cannot receive the protection afforded by third party status if the defects in the FDIC's title or the cause of its nullity appear clearly in the registry. *See Rivera v. Meléndez*, 72 P.R.R. 404 (1951), and cases cited there-

in. In the case at hand, there can be little doubt that prior to FDIC's filing of its title to the main property in 1983 pursuant to the court's aclaratory order, the registry reflected plaintiffs' ownership of lot number seven. Indeed, the segregation of lot number seven as a separate parcel was recorded successfully in 1981. Prior to that, the deed of sale of the main property to Harfran Realty indicated that plaintiffs were to retain ownership of lot number seven. It is less clear, however, whether these entries remained active and in effect at the time codefendants Rodriguez and Burgos purchased lot number seven from the FDIC in light of the fact that by then the latter had filed its deed of judicial sale without defects pursuant to the Superior Court's aclaratory order which found that the judicial sale included lot number seven. *See generally* 30 L.P.R.A. §§ 2451, 2453–55, 2458 (regarding the extinguishment of prior entries). We find it unnecessary to decide this issue, however, because it appears from the docket that whether or not the subsequent purchasers were on record notice of the cause of the nullity, they had actual notice of the facts underlying plaintiffs' claim.

In *Sánchez v. Colón,* 97 P.R.R. 481 (1969), the Supreme Court of Puerto Rico addressed the question of whether third party status could be denied to a subsequent mortgagee in spite of the fact that the mortgagor's recorded title revealed no defects. The Court in that case found that the mortgagee was not acting in good faith when he had knowledge outside of the registry that the debtor's claim on the mortgaged property was tarnished. The basis of the mortgagee's knowledge, the court found, lay in his ongoing business transactions with the debtor concerning the property in question. Because the mortgagee was "not ignorant of the *disagreement* between the Registry and reality," *Id.* at 486, he was not a civil bona fide and his interest

was not protected against the subsequent annulment of the debtor's title. *See also Pascual v. Fernández Sierra,* 108 D.P.R. 426 (1979).

After carefully examining the allegations and evidence submitted by all the parties, the court cannot avoid the conclusion that the codefendant subsequent purchasers had actual and personal knowledge that plaintiffs were the rightful owners of lot number seven.[4] This is largely due to the role played by codefendant Ana Rodriguez in various transactions involving the property in question, a role that if anything surpasses the business relationship conducted by the subsequent mortgagee in *Sánchez.* The docket shows that in 1971 when plaintiffs sold the main property to Harfran Realty, Ms. Rodriguez served as president of said corporation. Plaintiffs have stated in a sworn affidavit, and defendants have not denied, that Ms. Rodriguez participated in the negotiations that resulted in this sale, the deed of which makes clear that lot number seven was not included in the sale price and would pass back to plaintiffs upon perfection of the segregation. Therefore, codefendant Rodriguez is hardly in a position to plead ignorance of plaintiffs' claims at the time she and her husband purchased the main property, including lot number seven, from the FDIC. Neither was the subsequent sale to Jana Mortgage Bankers untarnished by Rodriguez' knowledge, because Ms. Rodriguez served as president of this entity at the time this transaction was made. In addition, Ms. Rodriguez served as director and treasurer of J. & A. Investment, to whom the four bearer notes secured by the main property were originally delivered by plaintiffs. At least one of these bearer notes specifically excludes lot number seven. From all of the above, there can be no doubt that codefendant Rodriguez had personal knowledge of plaintiffs' claim of ownership. Moreover, the docket reveals no reason—and this court cannot think of one

---

**4.** In their answer to plaintiffs' third amended complaint, codefendants Rodriguez and Burgos have denied that they had personal knowledge of the events underlying this dispute. However, the same codefendants have failed to go beyond the pleadings in response to plaintiffs' submission of affidavits and documents in support of

their allegation of such knowledge. Therefore, in light of the evidence submitted by plaintiffs (discussed in the main text above), and pursuant to *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and Fed.R. Civ.P. 56(e), we conclude that there is no genuine issue for trial regarding this matter.

—why this knowledge should not be attributed to the other subsequent purchasers, namely to Mr. Burgos, who is married to Ms. Rodriguez, and to Jana Mortgage Bankers, with whom Ms. Rodriguez serves as president.

One final word on the issue of codefendants' personal knowledge. Boiled down to its barest facts, this is a case where the FDIC foreclosed against Ms. Rodriguez' realty firm on property not owned by that firm, obtained what was essentially an ex-parte local judgment legitimizing that foreclosure, and sold the property back to Ms. Rodriguez in her personal capacity who then, in turn, resold it to another one of her corporations. Obviously, Ms. Rodriguez stood in the position at all stages of this long history to come forward and admit what she knew as early as 1971—namely, that the original sale of the main property to Harfran Realty was never intended to include lot number seven and that the elaborate efforts by the FDIC and others to wrestle this property from plaintiffs was misguided. Instead, she and her attorneys chose to keep quiet as to this simple, plain truth and try their luck on the strict letter of the title recording statute. But to find for the subsequent purchasers here would be to uphold mere formality of registration at the expense of fundamental fairness. This the civil law registration system was not designed to do, and thus it has developed the concept of the bona fide third person. *See generally, Pascual v. Fernández Sierra,* 108 D.P.R. 426 (1979).

For the above stated reasons, we therefore find that the subsequent purchasers are not good faith third parties pursuant to Puerto Rico Law. Thus, they receive none of the protections granted by such a designation.[5]

### C. Codefendant Banco Santander's Mortgage

Also named as a codefendant to this action is Banco de Santander de Puerto Rico.

Plaintiffs in their complaint seek a declaration that the mortgage executed by codefendants Burgos and Rodriguez in favor of Banco Santander does not encumber lot number seven. Because, by plaintiffs' own admission, codefendant Banco Santander has not recorded said mortgage with respect to lot number seven, we might be inclined to view plaintiffs' request for relief against this party as premature. However, because Banco Santander has not answered the complaint or appeared in any way in this action, the court will accordingly enter a default judgment *sua sponte* against it with respect to the declaratory relief requested.

### III. *Summary*

In sum, the court GRANTS plaintiffs' motion for summary judgment and enters the following relief:

1) The judgment, public auction, and aclaratory order in civil action 78–199 are declared null and void with respect to lot number seven.

2) Plaintiffs are adjudged the exclusive owners of lot number seven.

3) By reason of default, the mortgage held over the main property by codefendant Banco Santander is declared invalid and without effect with respect to lot number seven.

4) The Registrar of Property, Guayama Section, is hereby ordered to cancel and extinguish entries of the sale of lot number seven to the FDIC; and by the FDIC to codefendants Burgos and Rodriguez and their conjugal partnership; and by the aforementioned subsequent purchasers to Jana Mortgage Bankers.

IT IS SO ORDERED.

---

5. Here we note that the subsequent third purchasers, in their memorandum of law, ask that "if it is found that the FDIC did not transfer title to the claimed lot to the defendants herein, the FDIC should be liable to these defendants" under the applicable Puerto Rico statutes protecting warranty of title. Even were we to view this request as a cross-claim against the FDIC, which we do not, we doubt whether the same would be granted in light of our determination that the subsequent purchasers did not acquire their rights from the FDIC in good faith.