EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Oriental Bank<br><br>Peticionario<br><br>v.<br><br>Alvin Yamir Díaz Pagán<br><br>Recurrido | Certiorari<br><br>2025 TSPR 130<br><br>216 DPR ___ |

Número del Caso: CC-2024-0717

Fecha: 3 de diciembre de 2025

Representante legal de la parte peticionaria:

Lcdo. José M. Martínez Rivera

Representante legal de la parte recurrida:

Lcdo. Edgar D. Brito Borgen

Materia: Derecho Registral e Hipotecario – Registradores(as) de la Propiedad tienen el deber de calificar e inscribir los documentos presentados ante el Registro según establece el principio de tracto sucesivo, aun cuando se hayan presentado fuera del orden correspondiente.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Oriental Bank

    Peticionario

      v.                     CC-2024-0717

Alvin Yamir Díaz Pagán

    Recurrido

La Jueza Presidenta ORONOZ RODRÍGUEZ emitió la Opinión del Tribunal

En San Juan, Puerto Rico a 3 de diciembre de 2025.

En esta ocasión nos corresponde determinar cómo deben proceder los registradores y las registradoras del Registro de la Propiedad (Registro) cuando se presentan instrumentos públicos compatibles entre sí fuera del orden que requiere el principio de tracto sucesivo.

Tras un análisis ponderado de las normas legales aplicables, concluimos que los registradores y las registradoras de la propiedad tienen el deber de calificar e inscribir los documentos presentados ante el Registro según establece el principio de tracto sucesivo. Es decir, aun cuando se hayan presentado fuera del orden correspondiente, el principio de tracto

sucesivo tiene primacía sobre el principio de rango.

I

El 18 de julio de 2019 Scotiabank de Puerto Rico como Agente de Servicios de Banco Corporativo (Scotiabank) presentó una *Demanda* sobre ejecución de hipoteca por la vía ordinaria (*in rem*) contra el Sr. Alvin Yamir Díaz Pagán (señor Díaz Pagán). Adujo que el 16 de octubre de 2007 el señor Díaz Pagán otorgó la Escritura de Hipoteca Núm. 323 (Escritura de Hipoteca) mediante la cual constituyó un pagaré (Pagaré) a favor de RBS Mortgage Corporation, garantizado por una propiedad residencial en el Condominio Miradores del Yunque en el municipio de Río Grande (Propiedad) por la suma principal de $139,900. Alegó que era el tenedor de ese Pagaré y que la referida Escritura de Hipoteca estaba debidamente inscrita en el Registro. Expuso que el 17 de junio de 2011 la Escritura de Hipoteca y el Pagaré se modificaron,[1] y que las modificaciones se inscribieron en el Registro. Afirmó que el señor Díaz Pagán dejó de pagar las mensualidades acordadas y adeudaba la suma principal de $123,790.59 más intereses, costas y honorarios de abogado. Añadió que el 16 de agosto de 2016 el señor Díaz Pagán interpuso un procedimiento de quiebra pero que la Propiedad no era parte de dicho procedimiento.[2]

---

[1] Esbozó que la Escritura de Hipoteca Núm. 323 del notario público René Avilés Pérez se enmendó mediante la Escritura Núm. 90A de la notario público Ana E. Gorbea Padró para (1) modificar el principal del pagaré a $137,688.46; (2) modificar la fecha para comenzar a pagar los pagos mensuales; (3) alterar el vencimiento del último pago en concepto de principal e intereses, y (4) cancelar $2,211.54 de la deuda.

[2] El 21 de septiembre de 2016 la Corte de Quiebra emitió un *Notice of Abandonment of Property* mediante la cual notificó el abandono de la propiedad en controversia (Propiedad). Así, determinó que la Propiedad no formaría parte del caudal del Sr. Alvin Yamir Díaz Pagán (señor Díaz Pagán) en el proceso de quiebra. Apéndice del *certiorari*, pág. 178.

Solicitó que se declarara vencida la deuda y se ejecutara la Propiedad.

En diciembre de 2019 el señor Díaz Pagán presentó su *Contestación a la demanda*. Alegó que Scotiabank no demostró ser el poseedor del Pagaré y que la hipoteca no quedó constituida ante la falta de inscripción oportuna de la Escritura de Hipoteca. A su vez, adujo que el 1 de octubre de 2017 la Corte de Quiebras descargó la deuda antes de la inscripción de la Escritura de Hipoteca en el Registro. Por esa razón, entendió que el préstamo hipotecario suscrito, si alguno, era nulo o anulable y, en consecuencia, procedía la desestimación de la *Demanda*.

En enero de 2020 Scotiabank presentó una *Moción sobre sustitución de parte demandante*. Adujo que se había fusionado con Oriental Bank (Oriental) y que esta última era la entidad subsistente. Luego de la sustitución de la parte demandante,[3] el 11 de agosto de 2021 Oriental presentó una *Moción en Cumplimiento de Orden y en Solicitud de Sentencia Sumaria*. Solicitó que se dictara sentencia sumaria a su favor debido a que no existía controversia de hechos en cuanto a que la deuda era líquida y exigible. Enfatizó que la Escritura de Hipoteca estaba debidamente inscrita en el Registro.

El 4 de noviembre de 2021 el señor Díaz Pagán presentó una *Oposición a Sentencia Sumaria y Solicitud de Desestimación de la Demanda*. Reiteró que la hipoteca no se

---

[3] Es menester señalar que se llevó a cabo un referido al Centro de Mediación Compulsoria. No obstante, el señor Díaz Pagán desistió de participar en el proceso de mediación.

constituyó puesto que la Escritura de Hipoteca no se inscribió válidamente. Esto debido a que la Escritura Núm. 1075 sobre individualización y compraventa (Escritura de Individualización) no se presentó ante el Registro previo a la Escritura de Hipoteca, en contravención con el principio de tracto. En específico, alegó que la Escritura de Individualización mediante la cual adquirió la Propiedad y la Escritura de Hipoteca mediante la cual constituyó la hipoteca sobre la Propiedad se otorgaron el mismo día, el 16 de octubre de 2007. No obstante, sostuvo que la Escritura de Individualización se presentó ante el Registro el 19 de mayo de 2011, mientras que la Escritura de Hipoteca se presentó ante el Registro el 7 de noviembre de 2007. Indicó que este defecto hizo inexistente la garantía hipotecaria toda vez que no podía constituir una hipoteca sobre una propiedad que no le pertenecía, según las constancias del Registro. A su vez, alegó la inexistencia de la deuda porque la Corte de Quiebras la descargó.

El 3 de diciembre de 2021 Oriental presentó una réplica y alegó que el síndico en el caso de quiebra excluyó la Propiedad del caudal de quiebra. Indicó que, por esto, presentó la *Demanda* como una acción *in rem* dirigida a la Propiedad. Asimismo, argumentó que, antes de presentar la *Demanda*, la Escritura de Individualización y la Escritura de Hipoteca estaban debidamente inscritas en el Registro.

Así las cosas, el 18 de enero de 2023 el Tribunal de Primera Instancia emitió una *Sentencia* mediante la cual

declaró ha lugar la solicitud de desestimación del señor Díaz
Pagán. Indicó que, en virtud de lo expuesto en los documentos
que obran en el expediente, dictó sentencia sin
determinaciones de hechos ni conclusiones de derecho de
conformidad con la Regla 42.2 de Procedimiento Civil, 32 LPRA
Ap. V.

En desacuerdo, el 26 de junio de 2023 Oriental presentó
un recurso de *Apelación* ante el Tribunal de Apelaciones.[4] Tras
una revisión *de novo* del expediente, el 17 de septiembre
de 2024 el foro apelativo intermedio emitió una *Sentencia*
mediante la cual confirmó la determinación del foro primario.[5]
Señaló que el Tribunal de Primera Instancia acogió la
*Oposición a Sentencia Sumaria y Solicitud de Desestimación de
la Demanda* que presentó el señor Díaz Pagán como una solicitud
de sentencia sumaria. Del mismo modo, consignó quince (15)
determinaciones de hechos.[6] Así, determinó que, conforme al
derecho registral, era necesario que primero se inmatriculara

---

[4] Caso Núm. KLAN202300556.

[5] El Juez Sánchez Ramos disintió con un voto escrito. Indicó que no tenía
pertinencia que la Escritura de Hipoteca se presentó en 2007 y la
Escritura de Individualización en 2011. Expuso que el Registrador tenía
la autoridad y el deber de inscribirlas en el orden apropiado según el
principio de tracto, pues no se afectaban los derechos de terceros.

[6] El foro apelativo intermedio esbozó las siguientes determinaciones de
hecho: (1) en 2007 el señor Díaz Pagán compró la Propiedad al precio en
alzada de $139,900; (2) el 16 de octubre de 2007 el señor Díaz Pagán
constituyó una hipoteca en garantía de pagaré como promesa de pago a la
orden de RBS Mortgage Corporation; (3) el 7 de noviembre de 2007 se
presentó la hipoteca ante el Registro de la Propiedad (Registro); (4) **al
momento de presentar la hipoteca, la finca no se había inmatriculado;**
(5) el asiento de presentación de la hipoteca se mantuvo sin calificar;
(6) **el 19 de mayo de 2011 se presentó solicitud para inmatricular la
finca;** (7) como parte del proceso de quiebra, tras un abandono de la
propiedad por el síndico, el inmueble quedó fuera del caudal de quiebra;
(8) eventualmente, **el Registrador de la Propiedad (Registrador) calificó
todos los asientos presentados** en el Registro; (9)**inscribió, en primer
rango y como primera inscripción, la inmatriculación de la finca
presentada después de la hipoteca,** y (13) **luego, como segunda inscripción
-a pesar de que la ley establece que la inscripción se retrotrae a la
presentación- inscribió la hipoteca.**

la finca hipotecada para asegurar la validez de la hipoteca. Esbozó que el 7 de noviembre de 2007 se presentó la Escritura de Hipoteca en el Registro y que el 19 de mayo de 2011 se presentó la Escritura de Individualización. Señaló que el Registrador de la Propiedad (Registrador) procedió a inscribir la Escritura de Individualización antes de la Escritura de Hipoteca, a pesar de que debió inscribir en primer rango la Escritura de Hipoteca conforme al principio de primero en tiempo, primero en derecho. Asimismo, apuntó que no correspondía la inscripción de una modificación de una hipoteca sin vida jurídica. Concluyó que no procedía la causa de acción *in rem*, ya que la hipoteca nunca advino a la vida jurídica. Añadió que tampoco procedía la causa de acción personal (*in personam*) debido al proceso de quiebra que instó el señor Díaz Pagán.

Inconforme, el 14 de noviembre de 2024 Oriental presentó el recurso de autos. Solicitó que revoquemos la determinación del foro recurrido y esbozó los siguientes señalamientos de error:

> PRIMER ERROR: ERRÓ EL TRIBUNAL DE APELACIONES AL INMISCUIRSE EN LAS FACULTADES DEL REGISTRADOR DE LA PROPIEDAD DE INSCRIBIR UNA HIPOTECA Y SU MODIFICACIÓN Y, *MOTU PROPRIO* [. . .] DETERMINAR QUE TALES INSCRIPCIONES NO SON VÁLIDAS, RESULTANDO ELLO EN LA CONFIRMACIÓN DE LA DESESTIMACIÓN DE LA CAUSA DE ACCIÓN *IN REM* PROMOVIDA POR EL ACREEDOR HIPOTECARIO[.]
>
> SEGUNDO ERROR: ERRÓ EL TRIBUNAL DE APELACIONES AL CONFIRMAR POR OTROS FUNDAMENTOS LA SENTENCIA DEL TRIBUNAL DE PRIMERA INSTANCIA QUE DESESTIMÓ LA ACCIÓN *IN REM* QUE ENTABLÓ EL ACREEDOR HIPOTECARIO CON EL OBJETIVO DE RECOBRAR UNA DEUDA ASEGURADA[.]

Luego de haber expedido el recurso de autos, y contando con la comparecencia de las partes, resolvemos.

**II**

### A. La hipoteca

En Puerto Rico, como regla general, la inscripción de derechos reales en el Registro de la Propiedad tiene una función declarativa. Véase USI Properties, Inc. v. Registrador, 124 DPR 448 (1989). Es decir, la mayoría de los derechos reales nacen y se extinguen fuera del Registro. Íd. Ahora bien, existen situaciones en las que la inscripción de un derecho real en el Registro es de naturaleza constitutiva. L. Rivera Rivera, *Derecho Registral Inmobiliario Puertorriqueño*, 3ra ed., San Juan, Jurídica Editores, 2012, págs. 39-47. Por ser constitutivos, ciertos derechos reales nacen a la vida jurídica desde el momento en que se inscriben en el Registro. Íd. Si bien la escritura es un requisito formal que materializa la concesión de un derecho real, la inscripción es el acto que asegura la existencia de este derecho. Íd., pág. 45.

Entre los casos en los que la inscripción tiene una función constitutiva se encuentra el derecho real de garantía de hipoteca. Art. 1774 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 5042;[7] Art. 188 de la Ley Núm. 198 del 8 de agosto de 1979 conocida como la *Ley hipotecaria y del Registro de la Propiedad*, 30 LPRA sec. 2605 (Ley Hipotecaria de 1979).[8]

---

[7] En este caso aplica el Código Civil de 1930 pues los hechos que dieron paso a la controversia ocurrieron durante su vigencia. Este estuvo vigente desde su aprobación en el año 1930 hasta el 28 de noviembre de 2020 cuando el Código Civil de Puerto Rico de 2020 (Código Civil de 2020), Ley Núm. 55-2020, 31 LPRA *et seq.*, entró en vigor y lo derogó. Arts. 1819-1820 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5311 nota.

[8] En este caso aplica la Ley Núm. 198 de 8 de agosto de 1979 conocida como la *Ley hipotecaria y del Registro de la Propiedad*, 30 LPRA ant. sec. 2001

La hipoteca se concibe como un derecho real, en su función de garantía de una obligación pecuniaria, "de naturaleza accesoria e indivisible, y de constitución registral", que recae directamente sobre bienes inmuebles. SLG Haedo-López v. SLG Roldán-Rodríguez, 203 DPR 324, 341 (2019); Westernbank v. Registradora, 174 DPR 779, 784 (2008). Es decir, la hipoteca requiere "que se constituya para asegurar el cumplimiento de una obligación principal". Soto Solá v. Registradora, 189 DPR 653, 662 (2013). Para que una hipoteca quede válidamente constituida será necesario que se haga mediante escritura pública y que se inscriba en el Registro. Art. 188 de la Ley Hipotecaria de 1979, 30 LPRA sec. 2551. Por consiguiente, si el derecho de hipoteca no se constituye válidamente mediante su inscripción en el Registro de la Propiedad, la escritura de hipoteca tendrá carácter de un crédito personal. Capó v. Sucn. Rivera Zayas, 47 DPR 642 (1934).

Conforme a lo anterior, si el deudor incumple con los pagos de la hipoteca, un acreedor puede escoger entre exigir el pago de la deuda mediante una acción en cobro de dinero

---

et seq. Esto, pues la Demanda se presentó durante su vigencia. Según el Art. 309 de la Ley Núm. 210-2015, conocida como la Ley del registro de la propiedad inmobiliaria del Estado Libre Asociado de Puerto Rico, 30 LPRA sec. 6542, ninguna disposición de la ley hipotecaria actual

> se aplicará, o afectará, en forma alguna a los procedimientos judiciales en cobro y ejecución de créditos hipotecarios iniciados ante el tribunal antes de la fecha de entrar en vigor esta Ley. Estos procedimientos continuarán tramitándose conforme a la legislación o reglamentación anterior sobre la materia. No obstante lo dispuesto en el párrafo anterior, en todo procedimiento en el que al momento de entrar en vigor esta Ley no se haya otorgado la escritura de venta judicial, deberá cumplirse con el requisito de la presentación de Orden de Confirmación de Venta que se crea en esta Ley para su inscripción en el Registro.

personal o solicitar la ejecución de la garantía hipotecaria. First Fed. Savs. v. Nazario et als., 138 DPR 872, 880 (1995). En otras palabras, la hipoteca tiene doble naturaleza, a saber: una personal y una real. Íd. De ese modo,

> cuando el deudor y el propietario del bien hipotecado es la misma persona, la acción personal está inmersa en la acción real de ejecución de hipoteca por la vía ordinaria, por lo que las mismas son mutuamente excluyentes [. . .] En tal caso, el reclamante tendrá derecho a un solo remedio, esto es, el pago de lo adeudado. (Citas y negrillas omitidas) Íd. Véase P.R. Prod. Credit Assoc. v. Registrador, 123 DPR 231 (1989).

### B. El principio de tracto

El derecho registral inmobiliario puertorriqueño se basa en varios principios, entre ellos, el principio de tracto sucesivo o de continuidad registral. Este principio "tiene por objeto mantener el enlace o la conexión de las adquisiciones por el orden regular de los titulares registrales sucesivos, para formar una continuidad perfecta de todos los actos adquisitivos inscritos en orden al tiempo, de suerte que ello refleje el historial sucesivo de cada finca inmatriculada". Rigores v. Registrador, 165 DPR 710, 726-727 (2005) (citando a R.M. Roca Sastre, Derecho Hipotecario, 7ma ed., Barcelona, Ed. Bosch, 1979, T. II, pág. 327). Así, el "principio de tracto sucesivo es un principio de orden, a través del cual giran los demás principios hipotecarios, y señaladamente los de fe pública y de legitimación registral". Roca Sastre, op. cit., pág. 328. Este principio medular está contemplado en el Art. 57 de la Ley Hipotecaria de 1979, el cual dispone que,

> [p]ara registrar documentos por los que se declaren, trasmitan, graven, modifiquen, o extingan el dominio y demás derechos reales sobre bienes inmuebles, deberá constar

previamente registrado el derecho de la persona que otorgue o en cuyo nombre sean otorgados los actos o contratos referidos. Se denegará la registración de resultar inscrito el derecho a favor de persona distinta de la que otorga la transmisión o gravamen. No obstante, podrán inscribirse sin el requisito de la previa inscripción las resoluciones y ejecutorias, que se refieren en el Título XII. 30 LPRA ant. sec. 2260.

Por lo anterior, se requiere que "el transferente de hoy sea el adquirente de ayer y que el titular registral actual sea el transferente de mañana". Rivera Rivera, *op. cit.*, págs. 32-33. En otras palabras, el principio de tracto sucesivo "exige que el historial jurídico de cada finca inmatriculada, respecto de sus sucesivos titulares registrales, aparezca sin saltos ni lagunas". Íd. Consecuentemente, si se incumple con el principio de tracto sucesivo, procede la denegatoria de la inscripción. Íd., pág. 219. De ese modo, la Ley Hipotecaria de 1979 exige la más perfecta cadena entre los titulares de los derechos a inscribirse, salvo ciertas excepciones.

El Art. 69.1 del Reglamento Núm. 2674 de 9 de julio de 1980, conocido como el *Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad* (Reglamento Núm. 2674),[9] disponía lo siguiente:

> En caso de que se haya inscrito o anotado un título indebidamente en un asiento posterior al que le corresponda por razón de que su presentación sea posterior a otro también inscrito, se atenderá a la fecha de la presentación para determinar el rango de cada uno, excepto cuando sea[n] absolutamente incompatibles ambos títulos sobre la finca.
>
> **En caso de documentos armónicos no presentados en el orden en que deban ser inscritos no habrá que retirar el**

---

[9] El Reglamento Núm. 2674 fue derogado por el Reglamento Núm. 8814 de 31 de agosto de 2016 conocido como el *Reglamento General para la Ejecución de la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico* (Reglamento Núm. 8814).

**primero[,] sino que se inscribirá el que corresponda según lo dicte el tracto.**[10] (Negrilla suplida).

## C. *El principio de rango*

Otro principio fundamental del derecho registral inmobiliario puertorriqueño es el principio de prioridad o rango. El rango registral es el puesto que un derecho real ocupa, en relación con otros, respecto a un mismo bien inmueble en el Registro de la Propiedad. Gasolinas P. R. v. Registrador, 155 DPR 652, 674-75 (2001). El referido principio establece que "los actos registrables que primero ingresen al Registro de la Propiedad gozarán de una preferencia […] sobre cualquier otro acto presentado con posterioridad, aunque el último acto presentado fuese de fecha anterior [. . .]". Íd. (citado a R.Ma. Roca Sastre, *Derecho hipotecario: fundamentos de la publicidad registral*, 8va ed., Barcelona, Ed. Bosch, 1995, pág. 1). Esto es, que se concede el puesto conforme al principio de primero en tiempo, primero en derecho y surten efectos contra terceros desde su inscripción. Rivera Rivera, *op cit.*, pág. 269; Art. 53 de la Ley Hipotecaria de 1979, 30 LPRA sec. 2256.

El Art. 53 de la Ley Hipotecaria de 1979, *supra*, estatuye que **se considerará la fecha de presentación para determinar**

---

[10] Así también lo reconoce el Reglamento Núm. 8814 en su Regla 17.1. La referida Regla dispone lo siguiente sobre la armonización del tracto al momento de inscribir un documento en el Registro:

> No será necesaria la previa inscripción o anotación a favor de los mandatarios liquidadores, albaceas y demás personas que, con carácter temporal, actúen como representantes y dispongan de intereses ajenos en la forma permitida por las leyes. En caso de documentos armónicos no presentados en el orden en que deban ser inscritos no habrá que retirar el primero, sino que se inscribirá el que corresponda según lo dicte el tracto.

**la fecha de inscripción de un derecho. Por ende, cada título o gravamen inscrito se retrotrae a su fecha de presentación, determinando así su rango registral.**

Al respecto, hemos expresado que "[e]l momento de presentación del título en el Registro es el factor decisivo para otorgar esta preferencia excluyente o de superioridad de rango del derecho objeto del título presentado". Distribuidores Gas PR v. Registradora, 188 DPR 351, 363 (2013).

Ahora bien, hemos reconocido que el principio de rango **no es absoluto**. Pascual v. Fernández Sierra, 108 DPR 426, 433 (1979). Así, "[n]o es final e irreversible, el rango o preferencia excluyente obtenido con la presentación al Registro de la Propiedad [porque] hay un recurso a los tribunales de justicia para litigar las cuestiones que afecten la virtualidad o legitimidad de la preferencia ganada en el registro." Íd., pág. 427.

## III

Teniendo en cuenta la relación de este caso con el derecho federal de quiebras, primero corresponde pasar juicio para determinar si procede la ejecución de hipoteca *in rem* sobre la Propiedad. Establecido esto, debemos auscultar si la Escritura de Hipoteca se inscribió en el Registro de manera tal que la hipoteca advino a la vida jurídica y la acreencia de Oriental sobre la Propiedad sea válida.

Oriental alega que la hipoteca se constituyó válidamente pues nuestro ordenamiento jurídico le concede al Registrador

la facultad de calificar escrituras fuera del orden de presentación si se afecta el tracto. Así, sostiene que sería injusto que el acreedor pierda su crédito por el retraso del Registro. Arguye, además, que el señor Díaz Pagán abandonó la Propiedad, por lo que se excluyó del caudal en el proceso de quiebra. Ante ello, entiende que podía reclamar su deuda.

Por su lado, el señor Díaz Pagán alega que no procedía inscribir las escrituras, pues se presentaron fuera de orden. Además, expuso que la paralización automática del procedimiento de quiebra tuvo el efecto de descargar la deuda o que, en la alternativa, el reclamo de hogar seguro excluyó a la Propiedad del caudal de quiebra. Veamos.

**A.**

Según surge del expediente, la Escritura de Hipoteca se presentó ante el Registro en 2007. Sin embargo, no fue hasta el 19 de enero de 2019 que el Registrador determinó que procedía su inscripción. Conforme al Art. 53 de la Ley Hipotecaria de 1979, *supra*, la fecha de inscripción de un instrumento se retrotrae a la fecha de presentación, por lo que la Escritura de Hipoteca se considera inscrita desde el año 2007. Por tanto, cuando presentaron la acción de quiebra y la *Demanda* sobre ejecución de hipoteca, ya la hipoteca estaba inscrita.

Además, la norma establecida en estos casos es que cuando una deuda garantizada ya no se puede recobrar en contra de ciertos bienes personales del deudor como consecuencia de un proceso federal de quiebra, la viabilidad de la acción de

ejecución de hipoteca contra el inmueble no se afecta. Sobre

este tema, la Corte Suprema de Estados Unidos ha expuesto

que:

> [u]n deudor en mora puede protegerse de responsabilidad personal con la cancelación de la deuda que provee la liquidación al amparo del Capítulo 7. Véase 11 U.S.C. § 727. Dicha cancelación, sin embargo, extingue solamente "la responsabilidad personal del deudor". 11 U.S.C. § 524(a)(1). La norma pautada en Long v. Bullard, 117 US 617 (1886), se recoge en el Código, el cual dispone que el derecho del acreedor de ejecutar la hipoteca sobrevive el proceso de quiebra.
>
> .   .   .   .   .   .   .   .   .
>
> Por lo tanto, el Tribunal de Apelaciones erró al concluir que exonerar al peticionario de responsabilidad personal con relación a los pagarés puso fin a la totalidad de las reclamaciones del banco en contra del peticionario. Sin embargo, **la rehabilitación del quebrado solo extingue una modalidad mediante la cual puede hacer valer una reclamación (entiéndase, la acción in personam en contra del deudor) sin afectar otra modalidad, la de la acción *in rem* contra del deudor.** (Negrilla suplida)(Citas omitidas)(Traducción suplida). Johnson v. Home State Bank, 501 US 78, 82-84 (1991).

De este modo, la Corte Suprema de Estados Unidos

estableció que un proceso de quiebra extingue la vertiente

personal (*in personam*) de la obligación hipotecaria, mas no

la vertiente real (*in rem*). Por tanto, a pesar de que se haya

descargado la obligación personal de un deudor en un proceso

de quiebra, el acreedor hipotecario tiene disponible la

acción *in rem* en contra de la propiedad que se ofreció en

garantía. De ese modo, aunque la Corte de Quiebras descargó

la obligación personal hipotecaria del señor Díaz Pagán, esto

no tuvo el efecto de eliminar la obligación real hipotecaria

sobre la Propiedad. Por tanto, Oriental tenía derecho a

presentar la *Demanda* sobre ejecución de hipoteca.

**B.**

Establecido esto, debemos examinar si la Escritura de Hipoteca se inscribió en el Registro de manera tal que la hipoteca haya advenido a la vida jurídica, así validando el derecho de Oriental sobre la Propiedad. Surge del expediente que tanto la Escritura de Hipoteca como la Escritura de Individualización se otorgaron el 16 de octubre de 2007. Empero, reiteramos que la Escritura de Individualización se presentó ante el Registro el 19 de mayo de 2011, mientras que la Escritura de Hipoteca se presentó el 7 de noviembre de 2007. Del mismo modo, se desprende del expediente que el 19 de enero de 2019 el Registrador, **teniendo ambas escrituras ante su consideración**, determinó que procedía la inscripción de la Escritura de Individualización en primer rango y luego la Escritura de Hipoteca.

Aunque la Escritura de Hipoteca se presentó en primer orden y la Escritura de Individualización en segundo orden, el principio de tracto requería, previo a la inscripción de la Escritura de Hipoteca, la inmatriculación de la finca. Como mencionamos, el "principio de tracto sucesivo es un principio de orden, a través del cual giran los demás principios hipotecarios, y señaladamente los de fe pública y de legitimación registral". Roca Sastre, op. cit., pág. 328. Asimismo, el Art. 69.1 del Reglamento Núm. 2674, así como la Regla 17.1 del Reglamento Núm. 8814 vigente, reconocen la primacía del principio de rango y disponen que, cuando se presenten documentos compatibles fuera del orden en que deben

ser inscritos, no será necesario retirar el primero y, en su lugar, **"se inscribirá el que corresponda según lo dicte el tracto"**. Debido a que la Escritura de Hipoteca y la Escritura de Individualización son compatibles entre sí, el Registrador tenía el deber de inscribirlos en el orden que dicta el principio de tracto. En este caso, decretamos que el principio de tracto requiere que se inscribiera la Escritura de Individualización, mediante la cual se inmatriculaba la finca y se constituía al señor Díaz Pagán como su dueño, antes de inscribir la Escritura de Hipoteca sobre la misma Propiedad.

En ese contexto, la inscripción de la Escritura de Hipoteca y su posterior modificación son válidas, manteniéndose una garantía real sobre la obligación principal. Por tanto, el Registrador tenía la autoridad, y el deber, de inscribirlas en el orden apropiado. Además, el Registrador tenía todos los documentos pertinentes ante sí para realizar las inscripciones con el tracto debido y de conformidad con el orden lógico de las transacciones entre las partes. Así, actuó correctamente el Registrador al inscribir en primer orden la Escritura de Individualización, seguida por la Escritura de Hipoteca.

Ante esto, concluimos que los registradores y las registradoras de la propiedad tienen el deber de inscribir los documentos presentados ante el Registro de manera consistente con el principio de tracto sucesivo, aun cuando se hayan presentado fuera del orden correspondiente. Es

decir, bajo estas circunstancias, el principio de tracto sucesivo tiene primacía sobre el principio de rango.

**IV**

Por los fundamentos expuestos, se revocan las sentencias recurridas y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procesos de manera consistente con esta opinión.

Se dictará sentencia de conformidad.


Maite D. Oronoz Rodríguez
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Oriental Bank

    Peticionario

      v.                       CC-2024-0717

Alvin Yamir Díaz Pagán

    Recurrido


SENTENCIA


En San Juan, Puerto Rico, a 3 de diciembre de 2025.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revocan las sentencias recurridas y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procesos de manera consistente con esta opinión.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.


                Javier O. Sepúlveda Rodríguez
            Secretario del Tribunal Supremo