ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL 2026-26

| | | |
|---|---|---|
| **MCLP ASSET COMPANY, INC.**<br><br>Apelado<br><br>v.<br><br>**CLEOTILDE PIZARRO CLAUDIO t/c/c CLOTILDE PIZARRO CLAUDIO**<br><br>Apelante | TA2026AP00212 | **APELACION** procedente del Tribunal de Primera Instancia, Sala Superior de **Fajardo**<br><br>Civil Núm.: **FA2022CV00211**<br><br>Sobre: Cobro de Dinero y Ejecución de Hipoteca |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, y la Jueza Boria Vizcarrondo.[1]

Boria Vizcarrondo, Jueza Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 29 de abril de 2026.

Comparece ante nos Cleotilde o Clotilde Pizarro Claudio (Sra. Pizarro Claudio o parte apelante), mediante un *Escrito de Apelación*, y nos solicita que revoquemos una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Fajardo, (TPI) el 30 de diciembre de 2025.[2] Por medio de esta, el foro primario declaró con lugar la demanda de epígrafe, y, consecuentemente, ordenó a la Sra. Pizarro Claudio a pagarle a DLJ Mortgage Capital, Inc. (DLJ Mortgage) $25,617.70 de principal; intereses acumulados al 5.953% desde el 1ro de julio de 2019 hasta el saldo total de la deuda; más la suma de $2,550.00 por concepto de honorarios de abogado.

Por los fundamentos que pormenorizamos a continuación, se confirma el dictamen apelado.

---

[1] Mediante la Orden Administrativa OATA-2026-039 de 23 de abril de 2026, la composición del panel fue modificada.
[2] Sistema Unificado de Manejo y Administración de Casos (SUMAC), Entrada Núm. 66. Notificada y archivada en autos el 7 de enero de 2026.

**I.**

El caso de marras tiene su génesis el 4 de marzo de 2022 cuando DLJ Mortgage presentó una *Demanda* contra la Sra. Pizarro Claudio en concepto de cobro de dinero y ejecución de hipoteca.[3] Según DLJ Mortgage, el 24 de agosto de 2006, la Sra. Pizarro Claudio suscribió un pagaré hipotecario a favor de Associates International Holdings Corporation h/n/c Citifinancial (Citifinancial). Mediante dicho pagaré, Citifinancial le concedió a la Sra. Pizarro Claudio un préstamo principal de $25,500.00 y, en cambio, esta última garantizó en hipoteca un inmueble localizado en Río Grande. Sostuvo que, el 1 de noviembre de 2018, Select Portfolio Servicing, Inc., como el tenedor del pagaré, y la Sra. Pizarro Claudio modificaron los términos del préstamo hipotecario en cuanto al balance de principal, entre otra información. Asimismo, planteó DLJ Mortgage ser el tenedor y, por ende, la entidad con derecho a exigir el cumplimiento del instrumento. Planteó que la Sra. Pizarro Claudio había incumplido con los términos del préstamo al haber dejado de efectuar los pagos acordados, por lo que DLJ Mortgage optó por declarar vencida y exigible la totalidad del préstamo. Para ello, suplicó del foro primario condenar a la Sra. Pizarro Claudio al pago de una suma de $25,617.70 de principal, más intereses y honorarios de abogado.

Posteriormente, la Sra. Pizarro Claudio radicó una *Contestación a demanda* el 13 de junio de 2022 donde negó las alegaciones e incorporó sus defensas afirmativas.[4]

Luego de referirse el caso a mediación compulsoria y ordenarse la paralización del caso para que la Sra. Pizarro Claudio culminara su periodo de prueba,[5] según acordado en dicho

---

[3] *Íd.*, Entrada Núm. 1.
[4] *Íd.*, Entrada Núm. 13.
[5] *Íd.*, Entradas Núms. 28-29, 39, 41-42.

proceso,[6] DLJ Mortgage radicó una *Moción solicitando continuación de los procedimientos y sentencia sumaria* el 12 de noviembre de 2024.[7] Por medio de esta, DLJ Mortgage informó al TPI del cumplimiento de la Sra. Pizarro Claudio con los pagos del periodo de prueba, y del incumplimiento de ella con someter los documentos de modificación del préstamo firmados. Por tal razón, solicitó del foro *a quo* que autorizara la continuación de los procedimientos y dispusiera sumariamente de la demanda de autos conforme a las Reglas 36 y 42.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36 y R. 42.3.

Ulteriormente, el 19 de marzo de 2025, DLJ Mortgage presentó una *Moción solicitando sustitución de [la] parte demandante* por MCLP Asset Company, Inc. (MCLP Asset o parte apelada), a quien le transfirió el crédito hipotecario en cuestión con todos sus derechos como acreedor y demandante en el pleito de epígrafe.[8] Para ello, acompañó copia del pagaré hipotecario con un último endoso en blanco.[9] Dicha sustitución fue autorizada, posteriormente, por el foro primario.[10]

Por su parte, la Sra. Pizarro Claudio radicó un *Escrito en oposición a moción de sentencia sumaria* el 15 de abril de 2025.[11] Alegó que MCLP Asset no había acreditado que la deuda estuviese vencida y líquida ni que era el actual poseedor y tenedor del pagaré hipotecario. En cambio, planteó que el Banco Popular de Puerto Rico (BPPR) era el acreedor con rango preferente, y, por tanto, parte indispensable. Asimismo, arguyó que como no se había acumulado el BPPR, el TPI carecía de jurisdicción para resolver la controversia y procedía la desestimación de las acciones.

---

[6] *Íd.*, Entrada Núm. 39.
[7] *Íd.*, Entrada Núm. 43.
[8] *Íd.*, Entrada Núm. 54.
[9] *Íd.*, Anejo 1.
[10] *Íd.*, Entrada Núm. 55.
[11] *Íd.*, Entrada Núm. 56.

Después de múltiples trámites procesales, el TPI emitió la *Sentencia* aquí apelada el 30 de diciembre de 2025.[12] En esta, declaró con lugar la demanda de epígrafe, y, consecuentemente, ordenó a la Sra. Pizarro Claudio a pagarle a DLJ Mortgage $25,617.70 de principal; intereses acumulados al 5.953% desde el 1ro de julio de 2019 hasta el saldo total de la deuda; más la suma de $2,550.00 por concepto de honorarios de abogado.

Inconforme, la Sra. Pizarro Claudio presentó una *Moción de reconsideración de sentencia sumaria* el 22 de enero de 2026,[13] a la que se opuso MCLP Asset el 27 de enero de 2026.[14]

Ante ello, el foro *a quo* emitió una *Resolución* el 29 de enero de 2026 denegando la solicitud de reconsideración de la Sra. Pizarro Claudio.[15]

Insatisfecha, la Sra. Pizarro Claudio presentó ante nos un recurso de apelación el 27 de febrero de 2026 por el que apuntaló al foro primario por el siguiente error:

> **ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE FAJARDO, AL DICTAR SENTENCIA SUMARIA DECLARANDO CON LUGAR LA DEMANDA SIN CONTAR CON LA COMPARECENCIA DEL BANCO POPULAR DE PUERTO RICO COMO PARTE INDISPENSABLE POR SER EL ACREEDOR HIPOTECARIO CON RANGO PREFERENTE AL DE LA PARTE APELADA.**

El 6 de abril de 2026, MCLP Asset radicó una *Oposición a apelación*.

Contando con el beneficio de la comparecencia de todas las partes y del expediente ante nos, procedemos a disponer del recurso ante nuestra consideración no sin antes exponer el marco jurídico aplicable.

---

[12] *Íd.*, Entrada Núm. 66.
[13] *Íd.*, Entrada Núm. 67.
[14] *Íd.*, Entrada Núm. 68.
[15] *Íd.*, Entrada Núm. 69. Notificada y archivada en autos el 29 de enero de 2026; *Íd.*, Entrada Núm. 70.

## II.

### A.

La Regla 36 de Procedimiento Civil, *supra*, establece el mecanismo procesal de la sentencia sumaria. El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los que no existe controversia real y sustancial de hechos materiales y que no requieren ventilarse en un juicio plenario. *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Bobé et al. v. UBS Financial Services*, 198 DPR 6, 20 (2017); *SLG Zapata-Rivera v. JF Montalvo*, 189 DPR 414, 430 (2013). Mediante este procedimiento, una parte puede solicitar que el tribunal dicte sentencia sumaria sobre la totalidad o parte de la reclamación, y así se promueve la descongestión de calendarios. *Vera v. Dr. Bravo*, 161 DPR 308, 331-332 (2004).

De igual modo, el mecanismo de sentencia sumaria solo está disponible para la disposición de aquellos casos que sean claros; cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda; y que solo reste por disponer las controversias de derecho existentes. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911-912 (1994). Al evaluarse los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia, consciente en todo momento de que su determinación puede privar a una de las partes de su día en corte. *León Torres v. Rivera Lebrón,* 204 DPR 20, 44 (2020). De la mano con este precepto del debido proceso de ley, el juzgador deberá utilizar el principio de liberalidad a favor del opositor de la moción, lo que implica que, de haber dudas sobre la existencia de controversias de hechos materiales, entonces deberán resolverse a favor de la parte que se opone a la moción de sentencia sumaria. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 138 (2015); *Ramos Pérez v. Univisión*, 178 DPR 200, 216-217 (2010).

Además, nuestro máximo foro ha establecido que no es aconsejable dictar una sentencia sumaria cuando existe controversia sobre asuntos de credibilidad o que envuelvan aspectos subjetivos tales como la intención, los propósitos mentales o la negligencia. *Aponte Valentín v. Pfizer Pharmaceuticals, LLC*, 208 DPR 263, 278 (2021). Sin embargo, "nada impide que se utilice el mecanismo de sentencia sumaria en reclamaciones que requieran elementos subjetivos o de intención cuando surge de los documentos que se considerarán en la solicitud de sentencia sumaria la inexistencia de una controversia en torno a los hechos materiales". *Cruz Cruz v. Casa Bella Corp.*, 213 DPR 980, 993 (2024).

Para prevalecer en una moción de sentencia sumaria, su promovente tiene que establecer su derecho con claridad y debe demostrar que no existe controversia en cuanto a ningún hecho material, o sea, ningún elemento de la causa de acción. *Meléndez González et al. v. M. Cuebas, supra*, pág. 110. Por hechos materiales se entienden aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo. *Ramos Pérez v. Univisión, supra*, pág. 213. Además:

> "[U]na controversia no es siempre real o sustancial, o genuina. La controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. La fórmula, debe ser, por lo tanto, que la moción de sentencia sumaria adecuadamente presentada sólo puede negarse si la parte que se opone a ella presenta una oposición basada en hechos que puedan mover a un juez a resolver a su favor. Si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria".

> *Ramos Pérez v. Univisión, supra*, págs. 213-214 (*citando a* P. E. Ortiz Álvarez, *Hacia el uso óptimo de la sentencia sumaria*, 3 (Núm. 2) Forum 3, 8 (1987)).

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia que sea real en cuanto a algún hecho material a la controversia y, en ese sentido,

no es cualquier duda la suficiente para derrotar la solicitud. *Meléndez González et al. v. M. Cuebas, supra.* En efecto, la duda debe ser tal que permita concluir que existe una controversia real y sustancial sobre los hechos materiales. *Meléndez González et al. v. M. Cuebas, supra* (*citando a Ramos Pérez v. Univisión, supra,* pág. 214). Además, la parte promovida tiene que puntualizar los hechos propuestos que pretende controvertir, haciendo referencia a la prueba específica que sostiene su posición. *León Torres v. Rivera Lebrón, supra,* pág. 44. Es decir, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa". *León Torres v. Rivera Lebrón, supra,* pág. 44. De esta forma, no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. *SLG Zapata-Rivera v. JF Montalvo, supra,* pág. 414; *Ramos Pérez v. Univisión, supra,* pág. 215; *Cruz Marcano v. Sánchez Tarazona,* 172 DPR 526, 550 (2007).

Entretanto, la Regla 36.3 de Procedimiento Civil, *supra,* R. 36.3, establece el procedimiento para la consideración de la moción de sentencia sumaria, así como el contenido de la moción y de la contestación de la parte promovida. Respecto a la moción solicitando que se dicte una sentencia sumaria, la Regla 36.3(a) de Procedimiento Civil, *supra,* R. 36.3(a), dispone que tendrá que desglosar lo siguiente:

(1) una exposición breve de las alegaciones de las partes;

(2) los asuntos litigiosos o en controversia;

(3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;

(4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en

evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y

(6) el remedio que debe ser concedido.

Por otra parte, la Regla 36.3(b) de Procedimiento Civil, *supra*, R. 36.3(b), señala que la contestación a la moción de sentencia sumaria debe contener, además de los sub incisos (1), (2) y (3) del inciso (a): una relación de los hechos esenciales y pertinentes que están en controversia, con referencia a los párrafos enumerados por la parte promovente y con indicación de la prueba en la que se establecen esos hechos; una enumeración de los hechos que no están en controversia; y las razones por las que no se debe dictar la sentencia, argumentando el derecho aplicable.

De otra parte, en *Meléndez González et al. v. M. Cuebas, supra*, el Tribunal Supremo delineó el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de Procedimiento Civil, *supra*, y los criterios que la jurisprudencia le exige al foro primario. *Meléndez González et al. v. M. Cuebas, supra*, pág. 115. Asimismo, deberá examinar el expediente de la manera más favorable hacia la parte promovida, llevando a cabo todas las inferencias permisibles a su favor. Ahora bien, reconoció que el foro apelativo está limitado, toda vez que no podrá tomar en consideración evidencia que las partes no presentaron ante el foro primario, ni podrá adjudicar los hechos materiales en controversia.

En segundo lugar, prescribió que el Tribunal de Apelaciones deberá revisar que tanto la moción en solicitud de sentencia sumaria, como la oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra. Meléndez González et al. v. M. Cuebas, supra*, pág. 118.

En tercer lugar, mandató que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones deberá revisar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4. *Meléndez González et al. v. M. Cuebas, supra*, pág. 118.

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el derecho. *Meléndez González et al. v. M. Cuebas, supra*, pág. 119.

**B.**

En nuestra jurisdicción, las relaciones que nacen de los contratos se rigen por los principios de la autonomía de la voluntad y *pacta sunt servanda. Oriental Bank v. Perapi*, 192 DPR 7, 15 (2014). Por un lado, la autonomía de la voluntad dispone que "[l]os contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público". Artículo 1207 del *"Código Civil de Puerto Rico" Edición de 1930* (Código Civil de 1930), 31 LPRA sec. 3372; *Oriental Bank v. Perapi, supra*, pág. 15. Por el otro, el principio de *pacta sunt servanda* expone que "[l]as obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos". Artículo 1044 del Código

Civil de 1930, *supra*, ant. sec. 2994; *López v. González*, 163 DPR 275, 281 (2004).

Ahora bien, "[l]os contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley". Artículo 1210 del Código Civil de 1930, *supra*, ant. sec. 3375. Para que un contrato se considere perfeccionado, deben concurrir tres (3) elementos; a saber, el consentimiento de los contratantes, el objeto y la causa. Artículo 1213 del Código Civil de 1930, *supra*, ant. sec. 3391. El consentimiento "se manifiesta por la aceptación de una oferta sobre la cosa y causa del negocio". *Pérez Rosa v. Morales Rosado*, 172 DPR 216, 229 (2007). En cuanto al objeto, este debe tratarse de una cosa determinada en cuanto a su especie. Artículo 1225 del Código Civil de 1930, *supra*, ant. sec. 3423. Asimismo, la causa de cada contratante es "la prestación o promesa de una cosa o servicio por la otra parte; en los remuneratorios, el servicio o beneficio que se remunera, y en los de pura beneficencia, la mera liberalidad del bienhechor". Artículo 1226 del Código Civil de 1930, *supra*, ant. sec. 3431.

En lo pertinente al caso ante nos, los requisitos esenciales de los contratos de hipoteca son "(1) [q]ue se constituya para asegurar el cumplimiento de una obligación principal;] (2) [q]ue la cosa pignorada o hipotecada pertenezca en propiedad al que la empeña o hipoteca; (3) [q]ue las personas que constituyan la prenda o hipoteca tengan la libre disposición de sus bienes o en caso de no tenerla, se hallen legalmente autorizadas al efecto". Artículo 1756 del Código Civil de 1930, *supra*, ant. sec. 5001.

### C.

Por otro lado, la inscripción de derechos reales en el Registro de la Propiedad posee una función declarativa. *Oriental Bank v. Díaz*

*Pagán*, 2025 TSPR 130. La mayoría de los derechos reales surgen y se extinguen fuera de dicho registro. *Oriental Bank v. Díaz Pagán, supra.* Sin embargo, existen situaciones en las que la inscripción de un derecho real en el Registro es constitutiva; es decir, se trataba de derechos que nacen a la vida jurídica desde su inscripción. *Oriental Bank v. Díaz Pagán, supra.*

Entre las instancias en las que la inscripción posee una función constitutiva se encuentra la garantía de hipoteca. Artículo 1774 del Código Civil de 1930, 31 LPRA ant. sec. 5042. La hipoteca es definida como un derecho real sujeto a lo hipotecado, de carácter accesorio e indivisible. *Soto Solá v. Registradora*, 189 DPR 653, 661-662 (2013). "[S]e concibe como un derecho real, en su función de garantía de una obligación pecuniaria, 'de naturaleza accesoria e indivisible, y de constitución registral', que recae directamente sobre bienes inmuebles". *Oriental Bank v. Díaz Pagán, supra* (*citando a Haedo Castro v. Roldán Morales*, 203 DPR 324, 341 (2019)). Es decir, la hipoteca necesita constituirse para asegurar el cumplimiento de una obligación principal. *Soto Solá v. Registradora, supra*, pág. 662. Es decir, para que una hipoteca quede válidamente constituida será necesario que se haga mediante escritura pública y se inscriba en el Registro. Artículo 57 de la *"Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico"*, Ley Núm. 210 del 8 de diciembre de 2015 (Ley Núm. 210-2015), 30 LPRA sec. 6084. Cónsono con lo anterior, si el deudor incumple con los pagos de la hipoteca, un acreedor puede elegir entre exigir el pago de la deuda por medio de una acción en cobro de dinero personal o solicitar la ejecución de la garantía hipotecaria. Es decir, la hipoteca posee naturaleza doble; a saber, una personal y una real. *Oriental Bank v. Díaz Pagán, supra.*

**D.**

En esa misma línea, en una acción de cobro de dinero, la parte demandante tiene que probar ser la acreedora de una deuda vencida, líquida y exigible. *RMCA v. Mayol Bianchi*, 208 DPR 100, 108 (2021). Sobre ese particular, el Tribunal Supremo de Puerto Rico definió que es "líquida" aquella deuda cierta y determinada, mientras que se considera "exigible" porque puede demandarse su cumplimiento. *RMCA v. Mayol Bianchi, supra*, pág. 109. Por ello, "al alegarse que la cuenta es 'líquida y exigible' se están exponiendo hechos, a saber: que el residuo de la cuantía ha sido aceptado como correcto por el deudor y que está vencido". *RMCA v. Mayol Bianchi, supra*, pág. 109 (*citando a Guadalupe v. Rodríguez,* 70 DPR 958, 966 (1950)) (Énfasis suplido en el original eliminado).

**E.**

Bajo nuestro ordenamiento jurídico, una persona puede solicitar la desestimación de una demanda presentada en su contra "cuando surja de las alegaciones de la demanda que alguna defensa afirmativa derrotará la pretensión del demandante". *Eagle Security Police, Inc., v. Dorado*, 211 DPR 70, 83 (2023); Regla 10.2 de Procedimiento Civil, *supra*, R. 10.2. A esos efectos, la Regla 10.2 de Procedimiento Civil, *supra,* fija los siguientes fundamentos para solicitar la desestimación por: "(1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; (6) dejar de acumular una parte indispensable".

"La indispensabilidad de una parte deviene del mandato constitucional que prohíbe que una persona sea privada de su libertad o propiedad sin el debido proceso de ley". *Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza, Inc. v. Estado Libre*

*Asociado,* 211 DPR 521 (2023) (R. Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho procesal civil,* 6ª ed. rev., San Juan, LexisNexis de Puerto Rico, 2017, pág. 165). Este precepto, conforme a la Regla 16.1 de Procedimiento Civil, *supra,* R. 16.1, trata de "personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia, [por tanto,] se harán partes y se acumularán como demandantes o demandadas, según corresponda".

Al tratarse de un interés tan fundamental, la comparecencia de la parte constituye una defensa irrenunciable que puede presentarse en cualquier momento e incluso los tribunales apelativos pueden levantarla *motu proprio. Departamento de Asuntos del Consumidor v. Luma Energy, LLC,* 2025 TSPR 126, pág. 15; véase además, Regla 10.2 de Procedimiento Civil, *supra.* Ello, pues "toda sentencia dictada en ausencia de una parte indispensable es nula, pues priva al tribunal de jurisdicción sobre la persona sobre la cual se pretende hacer valer un dictamen". *Departamento de Asuntos del Consumidor v. Luma Energy, LLC, supra,* pág. 15. Asimismo, es harto conocido que la ausencia de jurisdicción conlleva varias consecuencias; a saber, "que no sea susceptible de ser subsanada; que las partes no puedan conferírsela voluntariamente a un tribunal como tampoco puede este arrogársela; la nulidad de los dictámenes emitidos; la imposición a los tribunales del ineludible deber de auscultar su propia jurisdicción; la obligación a los tribunales apelativos de examinar la jurisdicción del foro de donde procede el recurso[;] y su alegación puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio*". *Allied Management Group, Inc. v. Oriental Bank,* 204 DPR 374, 386 (2020). Nótese, no obstante, que la desestimación por dejar de acumular a una parte indispensable no tiene el efecto de una

adjudicación en los méritos. Regla 39.2 de Procedimiento Civil, *supra*, R. 39.2.

Ahora bien, al momento de determinar si una persona es parte indispensable en un pleito, "se requiere un enfoque pragmático e individualizado, a tenor con las particularidades de cada caso. A tal efecto, el tribunal deberá examinar los intereses envueltos y distinguir entre los diversos géneros de casos. Ello 'exige una evaluación jurídica de factores tales como tiempo, lugar, modo, alegaciones, prueba, clases de derechos, intereses en conflicto, resultado y formalidad'. A su vez, se deberá auscultar si el tribunal 'podrá hacer justicia y conceder un remedio final y completo sin afectar los intereses del ausente'". *FCPR v. ELA et al.*, 211 DPR 521, 531-532 (2023) (citas omitidas). Además, el interés común de dicha persona debe ser real e inmediato, y no puede estar basado en especulaciones ni eventos futuros. *García Colón v. Sucn. González*, 178 DPR 527, 548-549 (2010).

### III.

En el caso de marras, nos toca dirimir si el BPPR era parte indispensable, y si el foro primario incidió al dictar sentencia sumaria declarando con lugar la demanda sin acumular al BPPR en el presente pleito.

A juicio del foro primario, la Sra. Pizarro Claudio incumplió con su obligación de repagar el préstamo hipotecario concedido a su favor, siendo DLJ Mortgage el tenedor legítimo del pagaré, del que se desprendía la acreencia y garantía asegurando la misma. Por tanto, dispuso que la hipoteca podía ser ejecutada y el inmueble dado en garantía podía ser vendido mediante pública subasta para lograr el cobro total de las sumas adeudadas.

De este modo, dio por probado los hechos materiales incontrovertidos delineados en el dictamen apelado, los que, junto al derecho aplicable, "requer[ían] la declaración de que MCLP ASSET

COMPANY, INC. tiene derecho a cobrar la acreencia objeto de la Demanda y satisfacer la Sentencia Sumaria solicitada mediante la pública subasta y venta judicial del inmueble hipotecado".[16] De este modo, declaró con lugar la demanda de epígrafe, y, consecuentemente, ordenó a la Sra. Pizarro Claudio a pagarle a DLJ Mortgage $25,617.70 de principal; intereses acumulados al 5.953% desde el 1ro de julio de 2019 hasta el saldo total de la deuda; más la suma de $2,550.00 por concepto de honorarios de abogado.

Inconforme, la Sra. Pizarro Claudio sostuvo que la primera hipoteca que constaba en la *Certificación de Propiedad Inmueble* a favor de DLJ Mortgage era administrada por el BPPR.[17] Ante ello, adujo que el BPPR era parte indispensable, y, por tanto, al no acumularse, el foro primario dictó la *Sentencia* apelada sin jurisdicción.

Por su parte, MCLP Asset sostuvo que no existía disposición legal alguna que requiriese la inclusión de acreedores preferentes en una acción de cobro y ejecución de una segunda hipoteca como la del presente caso. En cambio, lo único necesario era la notificación debida a dicho acreedor en la etapa post-sentencia, mediante el edicto de subasta para que pudiese ejercer sus derechos de participar en la subasta con su crédito o cobrar su acreencia durante el procedimiento de venta judicial, conforme a la Ley Núm. 210-2015, *supra*, secs. 6139 y 6143.

Tras un análisis objetivo y cuidadoso, resolvemos que el foro primario no cometió el único planteamiento de error argüido por la Sra. Pizarro Claudio.

La *Sentencia* apelada se emitió en atención a la solicitud de sentencia sumaria presentada por DLJ Mortgage, por lo que

---

[16] *Íd.*, Entrada Núm. 66, pág. 11.
[17] *Íd.*, Entrada Núm. 43, Anejo 3.

debemos realizar el análisis establecido en *Meléndez González et al. v. M. Cuebas, supra.*

Según *Meléndez González et al. v. M. Cuebas, supra,* el primer paso del estándar de revisión de las solicitudes de sentencia sumaria conlleva revisar *de novo* el petitorio sumario junto a los anejos y el escrito en oposición. Al amparo del segundo pilar de dicho análisis, debemos evaluar que tanto la petición de sentencia sumaria como su oposición cumplan con los requisitos de la Regla 36 de Procedimiento Civil, *supra. Meléndez González et al. v. M. Cuebas, supra,* pág. 118. En efecto, luego de un examen cuidadoso de la solicitud de sentencia sumaria presentada por DLJ Mortgage[18] y la oposición radicada por la Sra. Pizarro Claudio,[19] colegimos que cumplen sustancialmente con los requisitos de forma de la Regla 36 de Procedimiento Civil, *supra.* Atendidos los primeros dos eslabones del análisis apelativo, ahora procede que examinemos como tercer paso si en realidad existen hechos materiales en controversia.

Del expediente ante nos se desprende que las determinaciones de hechos formuladas por el TPI surgen incontrovertidamente del récord. La solicitud de sentencia sumaria posee prueba fehaciente para demostrar los hechos materiales a las reclamaciones de marras, entre estos, declaraciones juradas y otra prueba documental. Recuérdese que el oponente a la moción de sentencia sumaria "tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa". *León Torres v. Rivera Lebrón, supra,* pág. 44. De esta forma, no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. *SLG Zapata-Rivera v. JF Montalvo, supra; Ramos Pérez v. Univisión, supra,* pág. 215; *Cruz*

---

[18] *Íd.*
[19] *Íd.,* Entrada Núm. 56.

*Marcano v. Sánchez Tarazona, supra,* pág. 550. En su primer y único error de la petición de *certiorari,* la Sra. Pizarro Claudio arguyó que el foro primario incidió al dictar sentencia sumaria declarando con lugar la demanda sin contar con la comparecencia del Banco Popular de Puerto Rico (BPPR), quien sostuvo era parte indispensable por tratarse del acreedor hipotecario con rango preferente.

Sobre esto, la Sra. Pizarro Claudio aludió a una *Certificación de Propiedad Inmueble.* Sin embargo, la misma dispone lo siguiente con relación a las hipotecas:

> **Hipoteca**: a favor de Doral Mortgage Corporation, con un valor de $57,800.00, Interés al 9.50% anual, Vencedero el 1º de septiembre de 2029. Se tasa la propiedad en una cantidad equivalente al principal del pagaré. Escritura #293 otorgada en Fajardo, Puerto Rico el 21 de agosto de 1999, ante el notario José Herminio Santiago, según inscripción 7ª.

> **Hipoteca**: a favor de Associates International Holding Corporation h/n/c Citifinancial, con un valor de $25,000.00, Interés al 13.656% anual, Vencedero el 29 de agosto de 2018, Affidávit #7,359. Se tasa la propiedad en la cantidad de $25,500.00. Escritura #420 otorgada el 24 de agosto de 2006, ante el notario Félix R. Figueroa Cab[á]n, según inscripción 8ª. Inscrita en virtud de la Ley 216 para agilizar Registro de la Propiedad de 2010.

> . . . .[20]

Es decir, de dicho documento-ni de ningún otro en el expediente-surge que la primera hipoteca es administrada por el BPPR ni que este fuese el tenedor legítimo del pagaré en cuestión correspondiente a la segunda hipoteca.

No existiendo hechos en controversia, procede que pasemos el cuarto y último eslabón; es decir, toca que determinemos *de novo* si el TPI aplicó correctamente el derecho. *Meléndez González et al. v. M. Cuebas, supra,* pág. 119.

---

[20] *Íd.,* Entrada Núm. 43, Anejo 3.

Es harto conocido que "[l]a indispensabilidad de una parte deviene del mandato constitucional que prohíbe que una persona sea privada de su libertad o propiedad sin el debido proceso de ley". *Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza, Inc. v. Estado Libre Asociado, supra* (R. Hernández Colón, *op. cit.*, pág. 165). Este precepto, conforme a la Regla 16.1 de Procedimiento Civil, *supra*, trata de "personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia, [por tanto,] se harán partes y se acumularán como demandantes o demandadas, según corresponda". Al tratarse de un interés tan fundamental, la comparecencia de la parte constituye una defensa irrenunciable que puede presentarse en cualquier momento e incluso los tribunales apelativos podemos levantarla *motu proprio*. *Departamento de Asuntos del Consumidor v. Luma Energy, LLC, supra*, pág. 15; véase además, Regla 10.2 de Procedimiento Civil, *supra*. Por tal razón, "toda sentencia dictada en ausencia de una parte indispensable es nula, pues priva al tribunal de jurisdicción sobre la persona sobre la cual se pretende hacer valer un dictamen". *Departamento de Asuntos del Consumidor v. Luma Energy, LLC, supra*, pág. 15. Habiéndose determinado que la Sra. Pizarro Claudio falló en demostrar que el BPPR administra la primera hipoteca ni que este fuese el tenedor legítimo del pagaré respecto a la segunda hipoteca, dicha entidad no es parte indispensable en el presente caso, y, consecuentemente, el foro primario no cometió el único planteamiento de error.

**IV.**

Por las razones discutidas anteriormente, se confirma el dictamen apelado.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones